[No. A118254. First Dist., Div. Two. June 17, 2009.]

LISA HERNANDEZ, Plaintiff and Appellant, v.
VITAMIN SHOPPE INDUSTRIES INC., Defendant and Respondent;
JEFFREY SPENCER, Objector and Appellant.

[No. A120640. First Dist., Div. Two. June 17, 2009.]

JANINE PERRY et al., Plaintiffs and Respondents, v.
VITAMIN SHOPPE INDUSTRIES INC., Defendant and Respondent;
ANDREW SHATZ, Objector and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

_____

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

COUNSEL

Law Offices of Jeffrey P. Spencer, Jeffrey P. Spencer; Lakeshore Law Center, Jeffrey Wilens; Wynne Law Firm, Edward J. Wynne and J.E.B. Pickett for Plaintiffs and Appellants and for Objectors and Appellants.

Reed Smith, Margaret M. Grignon, John P. Zaimes and Brian P. McKeever for Defendant and Respondent.

OPINION

LAMBDEN, J.—This is a consolidated appeal of matters that arose in the course of a class action in the Marin County Superior Court case, *Perry v. Vitamin Shoppe Industries Inc.*, case No. CV053770 (*Perry*).

After the trial court conditionally certified the class for settlement purposes, appellant Jeffrey Spencer, attorney for appellant Lisa Hernandez, a plaintiff in *Perry*, sent a letter to various class members urging them to opt out of the settlement, and to retain him as counsel against Vitamin Shoppe Industries Inc. in another class action involving the same matters. The court subsequently issued orders and rulings regarding these communications, barring Spencer from certain future communications, and granting monetary sanctions against him, which appellants Hernandez and Spencer challenge on appeal. In the published portion of this opinion, we affirm these rulings and orders, except that we reverse the trial court's imposition of monetary sanctions against Spencer.

In the unpublished portion of this opinion, we consider the arguments of appellant Andrew Shatz, the sole objector to the settlement, who contends that the trial court acted improperly in the course of supervising the exclusion period, and should not have approved an inadequate settlement. We reject Shatz's arguments, and affirm the court's final judgment.

## BACKGROUND TO BOTH APPEALS

*Perry* was filed in the Marin County Superior Court in August 2005 on behalf of certain California employees of Vitamin Shoppe. The complaint alleged nonpayment of overtime wages, meal and rest period violations, other violations of the Labor and Business and Professions Codes and of Industrial Welfare Commission wage orders, and violations of common law.

After Vitamin Shoppe answered the complaint, it informally provided extensive written discovery, and plaintiffs' counsel interviewed class members and putative class representatives, and conducted operational observations. This informal discovery included disclosure of Vitamin Shoppe's wage, payroll, and time records for the class period, and its applicable written policies. The information exchanged indicated that Vitamin Shoppe had been operating in California since December 2002, starting with a handful of stores. At the time of the complaint's filings, it had approximately 36 stores, 36 store managers, and 72 assistant managers. Vitamin Shoppe had not classified assistant managers as exempt and had reclassified managers as nonexempt prior to January 1, 2004. Declarations from 55 store managers and assistant managers indicated that the declarants were receiving meal and rest breaks on a consistent basis.

In the second half of 2005, Vitamin Shoppe's counsel approached plaintiffs' counsel in the three different putative class actions that had been filed regarding these matters, including *Perry*, and offered to settle on a classwide basis if the plaintiffs would agree to participate in mediation. Spencer, as attorney for the named plaintiff Thompson in *Thompson v. Vitamin Shoppe Industries Inc.* (Super. Ct. Orange County, JCCP No. 4461) (*Thompson*), declined to participate.

The parties in *Perry* reached a settlement after a day of mediation. They established a settlement fund of $351,000, which, after deduction of $105,000 for attorney fees, $7,500 for litigation expenses, and $7,500 for administrative expenses, provided for payments to two subclasses of Vitamin Shoppe employees. We discuss this settlement further in the unpublished portion of

this opinion.[1] In February 2006, certain named plaintiffs and Vitamin Shoppe jointly moved for preliminary approval of the class settlement, arguing that it was fair for numerous reasons.

Spencer had petitioned the Judicial Council to coordinate the three class actions and stay them, without success, and had moved in *Thompson* to stay the *Perry* proceedings, also without success. The *Thompson* court deferred hearing a pending petition for coordination to give the *Perry* court the opportunity to rule on the motion for preliminary approval of the settlement.

Hernandez and plaintiff Thompson in *Thompson*, both represented by attorneys Spencer and Jeffrey Wilens, opposed preliminary approval on the grounds that class counsel had not engaged in formal discovery with Vitamin Shoppe, that the settlement was based on erroneous factual and legal assumptions, and that it was not within a range of reasonableness. The named plaintiffs in the third class action, *Beauford v. Vitamin Shoppe Industries, Inc.* (Super. Ct. Marin County, No. CIV053191), also opposed this preliminary approval.

In April 2006, after hearing oral argument, including by Spencer, the trial court, Judge Sutro presiding, granted the motion for preliminary approval and conditionally certified a class for settlement purposes. The court found that "[t]he unique circumstances of this case, including the short time period, the small class size, the unsettled law regarding the applicable statute of limitations, and the extensive documentary evidence produced by [Vitamin Shoppe] and reviewed by all counsel and the mediator, support a proposed settlement at this stage of the litigation." The court also found that the lack of discovery was not an obvious deficiency in light of the extensive documents produced, and that the settlement "was negotiated between experienced counsel who investigated and evaluated the case, conducted a lengthy mediation, and reached a settlement untainted by collusion." The court concluded that the proposed settlement appeared to be fair and within the range of reasonableness. It approved the proposed notice to class members regarding the settlement and a procedure for class members to object to, and exclude themselves from, the settlement, appointed a claims administrator and ordered the administrator to mail the approved notices and exclusion forms, designated Janine Perry and Tom Vitrano as the class representatives, designated Wynne Law Firm as class counsel, and scheduled the hearing for final review of the settlement for October 2006.

---

[1] A third subclass was subsequently established, but it is not relevant to the Hernandez appeal.

# I.  THE HERNANDEZ APPEAL

## A.  *Additional Background*

Hernandez's appeal centers around a dispute that resulted from letters Hernandez's attorney, Spencer, sent in June 2006 to various Vitamin Shoppe employees after the court had conditionally certified the class and approved the notice of proposed class settlement, but before the *Perry* claims administrator sent the notice. The dispute led to certain court rulings and orders, the disqualification of Judge Sutro, the appointment of a new judge, and the issuance of written rulings, orders, and sanctions against Spencer.

Spencer, identifying himself as counsel in *Thompson*, represented in his letters to various members of the conditionally certified class that if the *Perry* settlement were approved, "substantial compensation will be forfeited," that "you will not be able to recover compensation for all the rest and meal periods you were denied or for all of the overtime compensation or penalties you are owed," and that "[u]nder California law you are entitled to an extra hour of pay for each rest and meal period that you missed during your employment." He advised them to "protect" themselves from the *Perry* settlement by opting out of the class and joining the *Thompson* action, which he stated was "in progress," encouraged them to request exclusion from the settlement, and warned that those who did not exclude themselves would be "stuck" with the settlement's terms. He solicited them to retain him as counsel, or to contact him for advice or assistance with respect to excluding themselves from the class, and enclosed his retainer agreement.

Upon learning about Spencer's letter, counsel for the *Perry* class representatives and Vitamin Shoppe jointly applied ex parte for an order enjoining Spencer from further communications with any class members. They also sought orders disqualifying him from further participation in the action, imposing monetary sanctions against him, directing that a corrective notice be sent to class members, and establishing a procedure to determine Spencer had improperly influenced class members who had opted out of the settlement. Spencer, as counsel for Hernandez, argued that he had not received proper notice of the application, that his letters were proper because he had sent them as counsel in *Thompson* rather than in *Perry*, that the recipients, as members of a conditionally certified class, were not represented by class counsel, and that the letters constituted protected speech. The court, Judge Sutro presiding, continued the hearing to give Spencer a further opportunity to respond.

At the continued hearing in July 2006, the court, Judge Sutro presiding, heard further argument and granted the application. It rejected Spencer's

arguments based on the fact that he had sent his letters after the court had conditionally certified a class and approved a notice procedure. It found that Spencer's letters were misleading, violated the Rules of Professional Conduct regarding communications with represented parties, and had attempted to interfere with the proper procedures governing the proposed settlement of the case. It ordered that a corrective notice be sent, directed Spencer to refrain from any further communications with class members that he did not represent, and granted the request for monetary sanctions, subject to further hearing on the amount. Among other things, the court stated it was contemplating referring Spencer to the State Bar, but would not take action at that point, and that Spencer's ethical violations merited his disqualification as Hernandez's attorney, but the court granted Spencer an opportunity to further brief that issue.

Spencer, as counsel for Hernandez, filed a verified statement of disqualification of Judge Sutro, arguing that Judge Sutro's rulings and certain of his remarks about Spencer at the hearing demonstrated bias and prejudice towards Hernandez. Judge Sutro struck Hernandez's statement pursuant to Code of Civil Procedure section 170.4, subdivision (b), finding that it failed to set forth legally cognizable grounds for disqualification. In *Hernandez v. Superior Court* (July 25, 2006, No. A114600) (nonpub. opn.), Hernandez filed a petition for writ of mandate with this court regarding Judge Sutro's striking of the statement. We issued an alternative writ of mandate on August 24, 2006, and the statement was reinstated.

The Judicial Council subsequently assigned the matter to Santa Clara Superior Court Judge John J. Garibaldi. Judge Garibaldi ordered Judge Sutro "disqualified from sitting and acting in the above case because of the appearance of probable bias toward a lawyer in the proceeding pursuant to [Code of Civil Procedure section] 170.1, [subdivision] (a)(6)." In his analysis, Judge Garibaldi relied upon Code of Civil Procedure section 170.1, subdivision (a)(6)(A) and (B), and considered the "[t]he totality of Judge Sutro's statements made at the subject hearing" in July 2006. He determined that a judge's impartiality was subject to an objective, rather than a subjective standard, and that "the issue is not limited to the existence of an actual bias. The question becomes whether a reasonable person would entertain doubts concerning the judge's impartiality." Judge Garibaldi found a number of Judge Sutro's hearing comments were appropriate, but was "concerned" about half a dozen other comments, "which appear to show judicial bias against counsel in this case." After discussing these comments, Judge Garibaldi stated: "Much of this gratuitous language to an objective observer is highly indicative that Judge Sutro has adopted a 'mental attitude or disposition' against a lawyer to the action. The comments strongly suggest, if they do not directly state, that the court believed Mr. Spencer was an attorney who lacked credibility, whose only concern about litigation was to make

money for himself, and whose willingness to engage in unprofessional behavior for his own financial gain undermined the principles of justice that Judge Sutro believed so deeply in. To a member of the discerning public, it would reasonably appear Judge Sutro has formed such a negative opinion of Mr. Spencer that he would be unable to give him fair consideration in any future hearings in this case."

Judge Garibaldi also stated that his order was not a ruling on "the legal soundness of Judge Sutro's rulings at the [ex parte application] hearing. A party's remedy for erroneous ruling is not a motion to disqualify, but rather a review by appeal or writ." He also expressed concerns about the court's award of sanctions, but stated that he was not ruling on its legal propriety either.

The case was reassigned to Judge Duryee. Class counsel and Vitamin Shoppe moved for an order formalizing Judge Sutro's rulings and for sanctions, all of which Hernandez opposed. The court, Judge Duryee presiding, after considering briefing and argument on the merits of Judge Sutro's rulings, granted most of what was requested. It found that Judge Sutro's disqualification had not rendered his oral rulings void, and that it had the authority to both impose monetary sanctions under Code of Civil Procedure section 128 and enjoin Spencer. The court enjoined Spencer from communicating with class members other than those who had retained him before the date of the preliminary approval of the class settlement, ordered the parties to prepare corrective notices to be sent to all class members, authorized the parties to establish a procedure to review decisions by class members to opt out of the class settlement to determine if they were impacted by Spencer's letter, and awarded attorney fees of $1,700 to class counsel and $9,412.50 to Vitamin Shoppe's counsel, to be later supplemented, as sanctions against Spencer. The court stated in its order that "Spencer's communications with the conditionally certified class members were improper," and that Judge Sutro's orders were not void pursuant to Code of Civil Procedure section 170.3, subdivision (b)(4).[2]

Hernandez and Spencer (referred to collectively as Hernandez herein) subsequently filed a timely notice of appeal from this order.

## B. *Issues Raised on Appeal*

Hernandez argues that the trial court erred in numerous ways when it formalized Judge Sutro's rulings and orders.

---

[2] The order refers to Code of Civil Procedure section "170.39B(4)," an obvious typographical error.

### 1. *Judge Sutro's Orders Were Not Void*

First, Hernandez argues that the trial court erred when it formalized Judge Sutro's orders and rulings because they were null and void as a result of his subsequent disqualification. This is incorrect.

■ Code of Civil Procedure section 170.1, subdivision (a)(6)(A), provides that a judge shall be disqualified if, for any reason, "(iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." Section 170.1, subdivision (a)(6)(B), provides that a judge shall be disqualified if "(B) Bias or prejudice toward a lawyer in the proceeding may be grounds for disqualification." Generally, a judge's disqualification occurs as of when the disqualifying facts arise. (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 770 [37 Cal.Rptr.3d 718] [finding that the disqualification occurred at the time a judge discussed a case with a previously disqualified judge].)

Hernandez argues that Judge Sutro's July 2006 orders, as subsequently "formalized" by the trial court, are void because Judge Sutro made them at the end of the July 2006 hearing, after he made the comments that Judge Garibaldi subsequently cited in his disqualification order. This argument lacks merit for two reasons.

First, Judge Garibaldi did not disqualify Judge Sutro based on a finding of actual bias. Instead, Judge Garibaldi found Judge Sutro had the "appearance of probable bias toward a lawyer," and stated that "it would reasonably appear Judge Sutro formed such a negative opinion of Mr. Spencer that he would be unable to give him fair consideration in any *future hearings* in this case." (Italics added.) In other words, Judge Garibaldi did not find actual bias, or that Judge Sutro was disqualified at any time before his July 2006 hearing rulings. Rather, Judge Garibaldi's finding related only to Judge Sutro's appearance of bias, and was expressly prospective in nature.

Second, to the extent Spencer argues that the facts giving rise to Judge Sutro's disqualification occurred at the time of the July 2006 hearing, we agree with respondents[3] that the analysis employed in *People v. Williams* (2007) 156 Cal.App.4th 949 [67 Cal.Rptr.3d 711] (*Williams*), applies here. In *Williams*, the appellate court held that a judge's order, issued at a hearing denying a motion to suppress evidence, was valid pursuant to Code of Civil Procedure section 170.3, subdivision (b)(4), even though the judge made statements at the same hearing that subsequently led to his prospective

---

[3] By respondents to the Hernandez appeal, we refer to defendant Vitamin Shoppe, which filed a respondent's brief, and plaintiffs Janine Perry, Tom Vitrano, and the conditionally certified class, which filed a joinder to that brief.

disqualification in the case for the appearance of bias against defendant. (*Williams*, at pp. 956–958.) The appellate court relied on the fact that the judge had not given the appearance of any bias against defendant prior to the hearing, and that the disqualification order referred to "*further* proceedings" rather than "past proceedings." (*Id.* at p. 958.)

Hernandez argues that the cases are distinguishable because Judge Sutro made his comments just before announcing his ruling at the hearing, while the judge in *Williams* made his comments just afterwards. This is a distinction without meaning. Both judges were disqualified prospectively because of the *appearance* of bias created by their remarks, and not because of a finding of actual bias existing at the time the judges made their substantive rulings. In short, Hernandez's "null and void" argument lacks merit.

## 2. *Judge Duryee Conducted an Independent Review*

Even if Judge Sutro's orders were null and void, we see no reason why Judge Duryee's subsequent order would not stand on its own. It was based on independent review and determinations regarding Spencer's communications, Judge Sutro's actions, and the parties' dispute, as indicated by two findings.

First, Judge Duryee found that Judge Sutro's orders were not void pursuant to Code of Civil Procedure section 170.3, subdivision (b)(4). Code of Civil Procedure section 170.3, subdivision (b)(4), provides: "If grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding, but before the judge has completed judicial action in a proceeding, the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge."

Judge Duryee's express reliance on this provision indicates that she conducted an independent review of the merits of Judge Sutro's orders, and found that there was not good cause to set them aside.

Second, Judge Duryee found that "Spencer's communications with the conditionally certified class members were improper." This too indicates an independent review of the merits of the dispute.

Thus, the record indicates that Judge Duryee, despite granting a motion styled as a request that she "formalize" Judge Sutro's rulings, relied upon her own consideration of the underlying merits in issuing the order.

### 3. *Hernandez's Arguments Regarding the Propriety of the Court's Order*

Hernandez argues on various grounds that the court's order was improper on the merits. These arguments are unpersuasive, except regarding the court's imposition of monetary sanctions.

#### a. *The Sanctions*

■ Judge Duryee imposed monetary sanctions against Spencer pursuant to Code of Civil Procedure section 128. As respondents concede, section 128 does not provide a court with the power to impose such sanctions. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1711–1712, 1716–1717 [71 Cal.Rptr.3d 207]; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 164 [80 Cal.Rptr.3d 812].) Therefore, we reverse this part of Judge Duryee's order.

#### b. *Spencer's Duties Under the Rules of Professional Conduct*

Hernandez argues that the trial court's enjoining Spencer from communicating with clients who retained him after the conditional certification of the class "creates an irreconcilable conflict between compliance with that order and attorney Spencer's obligations under <u>Code of Professional Responsibility</u> section 3-500 that he communicate with his clients and keep them informed of the status of their cases. Since the injunction requires attorney Spencer to violate his obligations to his clients it must be reversed." We reject this argument for several reasons.

First, although respondents do not raise the issue, we do not need to address the merits of Hernandez's argument because Hernandez does not establish necessary facts in his briefing. Spencer could not have violated his professional duties unless the court enjoined him from communicating as required with clients who retained him after the conditional class certification. Hernandez makes no effort to establish that anyone so retained him. Indeed, Hernandez's opening brief contains an ambiguous contention that suggests the contrary: "50 letters were sent [by Spencer] and only one person responded to the letter. That person is represented by attorneys Spencer and Wilens in a different class action and would have likely contacted them regarding the Vitamin Shoppe litigation regardless of the . . . letter." The only other relevant reference in the briefing is contained in a footnote in Vitamin Shoppe's reply brief. Vitamin Shoppe states that "[c]ounsel admitted that his letter generated a response from one of the plaintiffs in *Estel*, another wage and hour case that counsel filed against Vitamin Shoppe *after* Judge Sutro ordered counsel to refrain from contacting members of the *Perry* class."

Vitamin Shoppe cites to its own submissions to the trial court, including a statement in the declaration of its own attorney, John P. Zaimes, that "[o]n January 31, 2007, I attended a status conference in the *Estel* case. During that hearing, counsel for Hernandez, Jeffrey Spencer[,] admitted for the first time, that one of the individual plaintiffs in the *Estel* case had initiated contact with him after, and as a result of, receiving the improper letter that he sent." It is not clear from Zaimes's statement whether this individual had previously retained Spencer, or whether Spencer had any duty to keep this client informed of the status of any case.[4] Thus, Hernandez never establishes that the court's injunction actually prevented Spencer from communicating with anyone who retained him after the conditional certification.

■ We have the discretion to disregard issues not properly addressed in the briefs, and may treat them as having been abandoned or waived. (See, e.g., *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) " ' "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' " [Citation.] Because '[t]here is no duty on this court to search the record for evidence' [citation], an appellate court *may* disregard any factual contention not supported by a proper citation to the record [citations]." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 [122 Cal.Rptr.2d 204]; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416] [noting that the Cal. Rules of Court require factual assertions to be supported by citations to the record].) Accordingly, we conclude Hernandez has waived his "breach of duty" argument by failing to establish that the court's injunction actually caused Spencer to breach a duty to communicate with anyone who retained him after the conditional class certification.

Even if we were to consider Spencer's argument on its merits, it is unpersuasive. To the extent the record ambiguously suggests that Spencer may have been retained by a *Perry* class member who first contacted him after he sent his letters, whom Spencer subsequently may have represented in the *Estel* case, we fail to see how Spencer was entitled to maintain such a representation, given that he obtained it as a direct result of his violation of State Bar Rules of Professional Conduct, rule 2-100 (rule 2-100). As for any duty he had to inform such a person about the status of a case such as *Estel*, the court's corrective notice put that person on notice that Spencer was unable to do so as long as he or she remained a class member in *Perry*. Furthermore, Hernandez does not establish that any *Perry* class member could pursue another lawsuit regarding the same subject matter upon the final approval of the *Perry* settlement. In any event, nothing prevented a person

---

[4] Vitamin Shoppe's briefing to the trial court stated only that the *Estel* case "has been largely stayed . . . pending the outcome of the settlement approval proceedings herein."

desiring Spencer's representation from opting out of the *Perry* class. For that matter, nothing prevented Spencer from seeking permission from the trial court to communicate further with any client in order to end the representation.

We conclude that Spencer has waived, and has failed to establish the merits of, his argument that he had a purported duty to keep a client or clients informed of legal matters, but was prevented from doing so by the trial court's order.

### c. *Abuse of Discretion*

Hernandez also argues that the trial court abused its discretion by enjoining Spencer as it did. This argument lacks merit.

As we have already discussed, Hernandez has waived any argument, and failed to establish, that the court improperly barred Spencer from communicating with any client who retained him after conditional class certification.

■ Regarding the court's enjoining Spencer from communicating with other class members, all courts possess inherent supervisory or administrative powers to enable them to carry out their duties, albeit subject to certain limitations. (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 635–636, 639 [150 Cal.Rptr. 461, 586 P.2d 942], superseded by statute on other grounds as stated in *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809 [11 Cal.Rptr.3d 298, 86 P.3d 354].) In a class action, a trial court has the authority and the duty "to protect the rights of all parties, and to prevent abuses which might undermine the proper administration of justice." (*Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 581 [105 Cal.Rptr.2d 896].) Where a trial court identifies a potential for abuse, the court " 'has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel' " and parties. (*Id.* at p. 579.)

■ The court's duty to protect the rights of all parties is particularly pronounced once a class has been certified and notified of a potential class settlement, because class members must decide whether or not to opt out. (*Gainey v. Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1057 [231 Cal.Rptr. 249] (*Gainey*).) "The notice is a matter of extreme importance, committed to the discretion of the court, not the 'whim of litigants.' " (*Id.* at p. 1057.) The court must "assure that the notice be 'neutral and objective in tone, neither promoting nor discouraging the assertion of claims.' [Citation.] [¶] . . . 'It is essential that the class members' decision to participate or to withdraw be made on the basis of independent analysis of [their] own self-interest. It is the responsibility of the Court as a neutral arbiter, and of the

attorneys in their adversary capacity, to insure this type of free and unfettered decision. [¶] The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.' " (*Id.* at pp. 1057–1058.) Thus, once a notice is approved, a party "cannot send out its own competing and argumentative notice and invitation to the class members to opt out. [Citation.] Such conduct defeats the whole point of the court's holding a hearing to approve the notice to the class." (*Id.* at p. 1058.) It amounts to "an end run around the court's supervisory powers." (*Ibid.*)

Spencer sent his letters unilaterally, without court approval, after the court had reviewed the proposed settlement, counsel's arguments, preliminarily approved the settlement, and ordered the claims administrator to send notice to the class. Hernandez contends that the contents of Spencer's letters were not misleading. We disagree. He flatly declared to class members that, if the settlement were approved, "substantial compensation will be forfeited," and that "you will not be able to recover compensation for all the rest and meal periods you were denied or for all of the overtime compensation or penalties you are owed." He further declared that class members who did not "protect" themselves by opting out and joining the *Thompson* action would be "stuck" with the settlement's terms, and presented himself as an available advisor and counsel to be retained. In other words, Spencer stated a wholly biased view of the settlement in inflammatory language in order to persuade class members to opt out of the *Perry* class action and join *Thompson*. His communications misled members about the substance of the settlement by what he did and did not state, encouraging them to think that they were doing nothing less than "forfeiting" "substantial compensation" if they remained in the class, ignoring the numerous risks and uncertainties of litigation, remaining silent about defendant's arguments, leaving unsaid that the court had reviewed and preliminarily approved the settlement and would again review the matter before giving final approval, and prejudicing class members' view of the settlement before they received the court-approved notice. Rather than disclose his financial interest in their joining *Thompson*, he characterized himself, rather than the court, as the protector of the class. It is difficult to imagine a more inappropriate "end run around the court's supervisory powers." (*Gainey, supra*, 186 Cal.App.3d at p. 1058.)

Hernandez argues that the court's remedy for any harm done by Spencer's letter "had to be limited to correct[ing] any potential harm it caused. Since the letter only went to approximately 25 stores and a handful of class members, the remedy should have been limited to sending a corrective notice to those stores and recipients of the letter. Further, any injunctions could not have exceeded a prohibition against sending like communications in the future. The trial court did not articulate any imminent or continuing harm that would occur . . . ."

These arguments are unpersuasive. They ignore that the class members were, or had been, employed by the same company, making it possible that Spencer's letters would be discussed among class members beyond those who actually received them. Furthermore, the biased, inflammatory, and misleading content of Spencer's letters made plain the possibility that he would engage in future abuses if he were permitted to continue to unilaterally communicate with class members. We also disagree with Hernandez's contention that the trial court did not "articulate any imminent or continuing harm." Judge Duryee confirmed the merits of Judge Sutro's rulings, which Judge Sutro made after indicating Spencer had improperly interfered with a conditionally certified class represented by class counsel, in violation of Rules of Professional Conduct, after the court had approved a notice procedure. Furthermore, Judge Duryee stated that "Spencer's communications with the conditionally certified class members were improper," further indicating agreement with Judge Sutro's conclusions. These findings indicate an imminent and continuing harm with the exclusion process and the attorney-client relationships approved by the court. In short, the trial court did not abuse its discretion in issuing its orders.

### d. *Free Speech*

Hernandez also argues that the trial court, by enjoining Spencer from engaging in communications regarding any topic with clients who retained him after the conditional class certification and with other class members, ordered a prior restraint on his speech and, therefore, the order was unconstitutional under the federal and state Constitutions. This argument also lacks merit.

As we have already discussed, Hernandez has waived any argument about clients who retained him after conditional class certification by his failure to establish that he was so retained.

Regarding Spencer's communications with *Perry* class members, Spencer fails to establish that his constitutional free speech rights entitled him to interfere with the trial court's duty and authority to supervise the exclusion process after conditionally certifying the class, or to contact class members for whom the court had appointed class counsel.

### (1) *Conditional Class Certification*

██ The trial court applied the stringent certification requirements applicable to all class actions. Citing black letter class action case law,[5] the court

---

[5] The court cited *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462 [174 Cal.Rptr. 515, 629 P.2d 23]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801–1802 [56 Cal.Rptr.2d 483].

found that "[t]he moving parties have shown the existence of ascertaining classes, and well-defined community of interest in the questions of law and fact among the represented parties." The court unquestionably had the authority to conditionally certify a class for settlement purposes. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 [110 Cal.Rptr.2d 145] (*Wershba*).)

Hernandez nonetheless argues this certification did not authorize the court to regulate Spencer's communications as it did. Hernandez's argument relies heavily on case law involving precertification circumstances, such as *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 290 [135 Cal.Rptr.2d 90] (referring to communications "prior to class certification") and *Gulf Oil v. Bernard* (1981) 452 U.S. 89, 101 [68 L.Ed.2d 693, 101 S.Ct. 2193] (referring to communications with "potential class members"). However, as respondents point out, the trial court's duties and authority after class certification include acting to protect the class from the kind of biased, unilateral communications sent by Spencer.

For example, in *Gainey, supra*, 186 Cal.App.3d 1051, the trial court had found the action to be a proper class action and approved the plaintiff's draft of a notice to class members, which gave members the chance to opt out by notifying the trial court. (*Id.* at p. 1056.) During the opt-out period, the defendant unilaterally sent its own notice to class members presenting its defense, emphasizing possible disadvantages to members who did not request exclusion, and enclosing a form which members could use to opt out of the class. (*Id.* at pp. 1056–1057.) By the time the plaintiff moved for relief, 80 class members opted out using the defendant's form. (*Id.* at p. 1057, fn. 5.) The trial court denied the plaintiff's request that those class members who returned the defendant's exclusion form be returned to the class, and that a corrective notice be sent giving them a new period to determine whether or not to opt out. (*Id.* at pp. 1057–1059.)

The appellate court reversed the trial court's denial. It held that "[t]he notice is a matter of extreme importance, committed to the discretion of the court, not the 'whim of the litigants.' " (*Gainey, supra*, 186 Cal.App.3d at p. 1057.) Therefore, "[o]nce the content of the notice has been approved by the court, the defendant cannot send out its own competing and argumentative notice and invitation to the class members to opt out. [Citation.] Such conduct defeats the whole point of the court's holding a hearing to approve the notice to the class." (*Id.* at p. 1058.) The appellate court specifically rejected the defendant's argument that case law indicated it had an unrestricted right to communicate with class members during this period, as the cases involved either precertification or court-approved communications. (*Ibid.*, citing *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867 [212

Cal.Rptr. 773], *Zarate v. Younglove* (C.D.Cal. 1980) 86 F.R.D. 80, 101, *Cada v. Costa Line, Inc.* (D.C.Ill. 1981) 93 F.R.D. 95.)

█ Hernandez argues that the court's postcertification duties and authority do not extend to circumstances involving the *conditional* certification of a class for settlement purposes, but does not cite any case law on point in support of this position. Respondents respond that the court's postcertification duties and authority apply to a conditionally certified class. We are not aware of any case that specifically addresses a court's authority to regulate communications during the exclusion period that follows a conditional certification for settlement purposes. We conclude that, with regard to the matters before us, there is no meaningful difference between the exclusion period prior to final approval of a settlement and that of a class action that is being litigated.[6] As indicated in *Gainey, supra*, 186 Cal.App.3d 1051, a party's unilateral communications to class members considering whether or not to opt out defeats the whole point of a court considering and approving notice to the class. Whether such communications are sent to class members considering whether to participate in a settlement or in an ongoing litigation, the effect of such communications is the same—an undermining of the procedures established by law and the court for notice to a certified class. Spencer's letters most certainly did so here.

Furthermore, conditional class certification for settlement purposes has been treated no less seriously than certification for litigation purposes. (See, e.g., *Wershba, supra*, 91 Cal.App.4th 224.) Thus, it has been said regarding federal procedure that "[b]efore certification is proper for any purpose— settlement, litigation, or otherwise—a court must ensure that the requirements [for maintaining a class action under the Federal Rules of Civil Procedure] have been met." (*Denney v. Deutsche Bank AG* (2d Cir. 2006) 443 F.3d 253, 270.) One well-regarded commentator has stated that "[a]ctions in which courts certify classes as settlement classes must generally meet the same requirements for certification that litigation classes must meet." (4 Conte & Newberg, Newberg on Class Actions (4th ed. 2002) Preliminary approval, § 13:64, p. 478.)

We conclude that the court's duty and authority to protect class members from improper, unilateral communications after certification and approval of class notice extends to circumstances where certification has been conditioned on settlement.[7]

---

[6] To be clear, appellant does not raise any issues about the propriety of the court's conditional certification of the class.

[7] We again note that nothing in the court's order prevented Spencer from seeking court approval for any communications he might have desired to have with class members in the future.

### (2) *Legal Representation*

We also conclude that Spencer did not have the right to unilaterally contact class members after the court conditionally certified the class and appointed and designated the Wynne Law Firm as class counsel. As Judge Sutro alluded to at the July 2006 hearing, Spencer's subsequent communications with class members violated rule 2-100(A), which states that "[w]hile representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

Hernandez argues that Spencer was not prohibited from writing to class members as he did because none of them was represented by counsel. According to Hernandez, class counsel, the Wynne Law Firm, did not represent any of the recipients of Spencer's letters in the absence of signed retainer agreements, and, furthermore, "[p]reliminary approval of a class action settlement does not constitute unconditional class certification and does not make the putative class members 'represented clients' of the proposed class counsel." Hernandez does not provide any relevant legal authority for this argument, merely citing two cases, *Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at page 873 and *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 736 [135 Cal.Rptr.2d 415], which determined that a putative class member was not deemed a party before certification had occurred.[8]

We are not aware of a California state court that has directly addressed whether a conditional class certification triggers rule 2-100's "no contact" rules. As respondents point out, a number of federal courts have found that the certification of a class triggers such rules. (See, e.g., *Parks v. Eastwood Ins. Services, Inc.* (C.D.Cal. 2002) 235 F.Supp.2d 1082, 1083 [citing rule 2-100]; *Kleiner v. First Nat. Bank of Atlanta* (11th Cir. 1985) 751 F.2d 1193, 1207 & fn. 28 [stating, based upon a model ABA rule analogous to rule 2-100, that defense counsel had "an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification," since "class counsel represents all class members as soon as a class is certified . . ." (fn. omitted)]; *Resnick v. American Dental Assn.* (D.C.Ill. 1982) 95 F.R.D. 372, 378–379 [class certification barred attorney from communicating with absent class members under applicable rules of professional conduct because "without question" absent members are represented by class counsel].) We conclude rule 2-100 was triggered by the court's conditional certification of the class here as well.

---

[8] Furthermore the appellate court in *Atari* noted that the trial court could limit communications from a defendant or a named plaintiff to potential class members upon application for a protective order, "which probable circumstances may make appropriate." (*Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at p. 873.)

Hernandez argues further that rule 2-100 does not apply because it provides only that while representing a client, an attorney shall not communicate with a "party" who the attorney knows is represented by another lawyer. Hernandez contends that Spencer had no reason to know that he was writing to represented parties because, even after unconditional certification of a class, a class member is not a "party" to the class action. Hernandez supports this argument with citations to case authority that discusses inapposite circumstances, and, for the most part, contain courts' acknowledgements that absent class members *are* "parties" for certain purposes. (See *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1431–1432, 1434, fn. 11 [95 Cal.Rptr.2d 57] [absent class members are not liable for an award of costs, but "may be 'parties' for certain purposes"]; *Lamb v. United Security Life Co.* (S.D.Iowa 1973) 59 F.R.D. 44, 49 [class members are not parties to the action who are liable for costs or expenses assessed against the representative parties plaintiff]; *Turner v. Alaska Communications Systems* (Alaska 2003) 78 P.3d 264, 266 ["absent class members 'are not liable for costs, though they may be otherwise bound by the judgment, whether favorable or unfavorable' "]; *Devlin v. Scardelletti* (2002) 536 U.S. 1, 10–11 [153 L.Ed.2d 27, 122 S.Ct. 2005] [absent class members are not parties for the purposes of diversity jurisdiction, but are parties for other purposes]; *In re Dale* (2005) 4 Cal. State Bar Ct. Rptr. 798 [rule 2-100 does not apply when the person contacted was represented by legal counsel, but was only a witness and not a party to the subject civil suit].) Hernandez's parsing of words also ignores the case law regarding representation of certified classes that we have discussed, and the trial court's April 2006 order, which indicate that the conditionally certified class members were represented by class counsel. We conclude that absent class members of a conditionally certified class are "parties" represented by class counsel, and reject Hernandez's "lack of knowledge" argument.

Hernandez further argues that rule 2-100 does not apply to Spencer's letters to *Perry* class members because it was intended to prevent an attorney from taking advantage of an *opposing* party in the absence of his or her counsel and to preserve the integrity of the attorney-client relationship. On its face, the rule is not limited to communications by opposing counsel. We see no reason to so limit the rule, particularly when Spencer's statements in his letter were antagonistic to the views of class counsel. Although Spencer did not identify himself as such in his letters, at the time he wrote them he was counsel for plaintiff Hernandez in *Perry*, and had unsuccessfully urged the trial court to deny the motion for preliminary approval of the settlement. In his letters, he opined about the preliminary settlement in *Perry* and the opportunities for recovery to already represented class members. By doing so, Spencer plainly intruded upon the attorney-client relationship between class members and class counsel, threatening the integrity of that relationship. Therefore, we reject Hernandez's "opposing party" argument.

Finally, Hernandez notes that the Rules of Professional Conduct, rule 3-510, regarding an attorney's obligation to communicate settlement offers to a "client," limits this obligation in class actions to a requirement that counsel communicate with named class representatives.[9] Hernandez argues that "[i]f an unnamed class member does not have to be notified of a settlement offer, he can hardly be considered a 'represented party' for purposes of rule 2-100 either." We do not agree. Just because class counsel may have heightened obligations to named representatives in such matters as settlement offer communications does not necessarily mean that counsel does not represent the entire class. Hernandez's argument is unpersuasive.

■ We conclude that Spencer's letters were communications with represented parties in violation of rule 2-100. Hernandez does not establish that Spencer's constitutional free speech rights somehow trump the requirements of rule 2-100. The court's prohibiting Spencer from communicating further with the class, other than those he represented prior to class certification, simply ensured that he would act in accordance with this rule.[10]

In short, Hernandez's free speech argument lacks merit for two separate and independent reasons. First, the court had the authority to protect class members from improper, unilateral communications after the conditional certification of the class and approval of class notice. Second, Spencer's letters to members of the conditionally certified class were communications in violation of rule 2-100.[11]

## II. THE SHATZ APPEAL*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

---

[9] Rules of Professional Conduct, rule 3-510(B) states, "As used in this rule, 'client' includes a person who possesses the authority to accept an offer of settlement or plea, or, in a class action, all the named representatives of the class."

[10] In appellants' reply brief, Hernandez argues that rule 2-100 permits a represented party "to initiate communication with any counsel of their choosing, including Spencer regarding the case," and that the court's injunction improperly barred such communications. Arguments raised for the first time in the reply brief are considered untimely and may be disregarded by the reviewing court. (See, e.g., *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10 [93 Cal.Rptr.2d 364].) Accordingly, we disregard the argument.

[11] Accordingly, we need not discuss the parties' arguments about such rights in any further detail. We do not discuss such arguments as the contours of Spencer's purported free speech rights and whether his communications were solely commercial speech, whether his solicitation was so misleading as to be unprotected by commercial free speech law and in violation of Rules of Professional Conduct, rule 1-400, and regarding the court's authority to issue orders regarding Spencer's conduct in a precertification context.

*See footnote, *ante*, page 1441.

## DISPOSITION

We affirm the trial court's orders and judgment, except that we reverse the trial court's ruling that Spencer pay sanctions of $1,700 to class counsel and $9,412.50 to Vitamin Shoppe's counsel. Appellants are to pay costs of both appeals.

Kline, P. J., and Richman, J., concurred.