Filed 9/25/20  In re Isabella C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ISABELLA C., <br><br> a Person Coming Under the Juvenile Court Law. | B302204 <br><br> (Los Angeles County Super. Ct. No. NJ29704) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ISABELLA C., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Wesley, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

While the minor Isabella C.[1] and a male companion were burglarizing a parked vehicle, the owner returned and confronted the pair, causing them to flee. The vehicle's owner caught up with Isabella who then threatened to cut her with a box cutter unless she was allowed to escape.

The juvenile court found these acts caused Isabella to be a person described by Welfare and Institutions Code section 602[2] in that she committed assault with a deadly weapon, second degree burglary of a vehicle, and personally used a deadly weapon.

The juvenile court ordered suitable placement for a maximum of six years for first degree residential burglary (involving allegations made in a separate section 602 petition), plus one year for the assault with a deadly weapon, plus one year for the second degree burglary of a vehicle, plus four months for personally using a deadly weapon.

Isabella appeals arguing insufficient evidence supports the second degree burglary of a vehicle charge because she was acting in self-defense. She also argues Penal Code section 654

---

[1] We refer to the minor by her first name and last initial to protect personal privacy. (See Cal. Rules of Court, rules 8.90(b)(4), 8.401(a)(2).)

[2] Subsequent undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

applies to the assault with a deadly weapon and car burglary charges and, thus, her maximum term of confinement should be reduced.

We affirm.  Sufficient evidence supports the car burglary conviction.  The only evidence Isabella was acting in self-defense is a convoluted story which the trial court rejected.  Moreover, as the initial aggressor, Isabella may not avail herself of the defense.

Nor does Penal Code section 654 apply because Isabella harbored separate intents and objectives when she attempted to burgle the car, and then later threatened to cut the car owner in order to escape arrest.

## FACTUAL AND PROCEDURAL BACKGROUND

Isabella was involved in three separate crimes on three different occasions.  She received probation for the first, which was revoked when she committed the second.  And before the juvenile courts disposed of the second petition, she was involved in a third crime.  The third crime is the basis of the instant appeal.

We begin by briefly describing the first two crimes in order to provide necessary context.  The third crime receives more detailed treatment accordingly.

A.  **The First and Second Incidents and the First and Second Section 602 Petitions**

On September 10, 2018, the People filed their first petition involving Isabella.  She was alleged to be a person described by section 602 in that she committed misdemeanor petty theft (Pen. Code, §§ 484, subd. (a), 490.2).  The petition alleged she stole cosmetic products from Rite Aid for a total value not exceeding

3

$950.  Isabella admitted the allegations of the first petition, which the juvenile court sustained.  She was placed on probation for six months under section 725.

About six months later, Isabella was involved in a residential burglary causing a second section 602 petition to be filed.  This petition, filed February 21, 2019, alleged that on or about December 3, 2018, Isabella committed first degree residential burglary (Pen. Code, § 459) by entering an inhabited dwelling with the intent to commit larceny.

Isabella's probation was revoked for violating the terms of her probation and incurring a new petition.  The juvenile court set the matter for disposition.

**B.  The Third Incident and the Third Section 602 Petition**

On May 21, 2019, before disposition of the second petition, the People filed a third section 602 petition.  The third petition alleged Isabella committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and second degree burglary of a vehicle (*id*., § 459).  The petition further alleged that Isabella personally used a deadly weapon (*id*., § 12022, subd. (b)(1)).  Isabella contested the disposition, and a hearing was held in which the following evidence was adduced.

On May 17, 2019, around 8:30 p.m., Esther Diaz parked her car in an alley in Whittier.  Diaz returned to her car around 10:00 p.m. and noticed Isabella's upper body inside the trunk of Diaz's car.  "[Isabella] was from her waist up was inside the trunk."  She also noticed a man in the driver's seat.  The gas tank door was open.

Diaz approached Isabella and asked:  "Do you need something?"  Isabella said "No," exited and closed the trunk, and

4

walked around to the driver's side.  Diaz walked to the passenger side.  She could see broken glass on the front passenger seat.  The driver's window was broken.

The man in the driver's seat then got out of the car.  Diaz asked, "What are you doing?  This is my car."  Isabella intervened, moved between the man and Diaz, and said, "Don't come near us we have a knife.  I'll cut you."  When she saw that Isabella was holding a box cutter, Diaz started walking backward, and Isabella walked toward her.  Diaz told Isabella to "drop it," and "let's fight."  Then the man told Diaz, "Don't touch us, we'll cut you."

Because Diaz's car was parked at the end of the alley and that was the only way to the street, Isabella and the man had to walk past Diaz in order to escape.  "They were trying to make their way towards the street," Diaz testified.  While Diaz continued to walk backwards, Isabella and the man suddenly ran past her.  But Diaz chased them.  Isabella and the man then split up, running in different directions.  Diaz kept chasing Isabella.

Diaz ultimately caught up to Isabella, which led to a second confrontation.  Isabella raised the box cutter and threatened, "Don't touch me cause I'll cut you."  Diaz repeatedly instructed Isabella to "drop it," but Isabella refused and instead moved towards Diaz and swung the box cutter in her direction—they were only one arms length apart.  Diaz avoided the blow, punched Isabella, and grabbed the wrist in which Isabella was holding the box cutter.  Diaz testified the box cutter came within 12 inches of cutting her.  Diaz continued to hold Isabella's wrist and got Isabella onto the ground.  She then put her foot on Isabella's wrist so that she could remove the blade.  Diaz pried the blade out of Isabella's hands.  Isabella tried to get up to flee,

but Diaz had her knee on Isabella's arm and punched Isabella in the face several times until police arrived and told Diaz she could let go.

Officer Preston Wilks responded to the scene and saw Diaz holding Isabella down on the ground. Diaz told Officer Wilks that Isabella attempted to stab her. The box cutter was lying about five feet from Isabella.

During the disposition hearing, Isabella took the stand in her own defense. The theory of her case was self-defense.

Isabella testified that she and her companion, Daniel Alvarez, were walking together when Alvarez broke into Diaz's car. Isabella testified that she "was standing kind of by the trunk." Then, "a few minutes later, I see this girl come out and she comes up to me and says 'what are you doing?' And at that point, I see [Alvarez] running and then I tried to run but then, like, it happened really fast and then she grabbed me."

After Diaz grabbed her, Isabella testified "we tried—I don't know who ran. He ran first. Then I ran after . . . . [And] after she socked me, like, it was just a big blur. Basically, she got me to the floor and then—but . . . I never swung at her or nothing."

On cross-examination, Isabella insisted she did not know Alvarez was going to break into the car, but after she saw it happening, she stood by the car to act as a look out.

As for the box cutter, Isabella said she carried it inside her sleeve in case something were to happen as she and Alvarez were on their way to the store.

## C. The Juvenile Court's Ruling and Sentencing

The juvenile court sustained the third petition as alleged and declared Isabella to be a ward of the court. Isabella admitted the allegations of the second petition (involving the residential

burglary).  The court initially placed Isabella on community detention for 45 days pending its review of supplemental probation report.

When the court recalled Isabella, it noted it had reviewed four probation reports and found Isabella's parent or guardian incapable of providing necessary care, and that Isabella has failed to reform during the pendency of the matter.

The court therefore ordered Isabella to be suitably placed with a maximum confinement of eight years and two months, consisting of six years for first degree residential burglary (Pen. Code, § 459) plus one year for the assault with a deadly weapon (*id*., § 245, subd. (a)(1)), plus one year for the second degree burglary (*id*., § 459), plus four months for personally using a deadly weapon (*id*., § 12022, subd. (b)(1)).

Isabella timely appealed.

## DISCUSSION

Isabella makes two arguments on appeal, both directed at the judgments involving the bungled car burglary.  First, she argues the assault with a deadly weapon offense is not supported by substantial evidence because she acted in self-defense.  Second, she argues her maximum term of confinement should be reduced because, under Penal Code section 654, the assault with a deadly weapon charge merged with the car burglary.

We disagree.  As to the self-defense argument, the trial court found Isabella's self-defense story implausible and that she lacked credibility.  Moreover, as Isabella was the initial aggressor of the conflict, she cannot invoke self-defense.  The Penal Code section 654 argument also fails because Isabella harbored separate intents and objectives when she was attempting to

7

burgle Diaz's car and when she later fought with Diaz in another location in order to escape.

## A.      Standard of Review

The standard of review applicable to a sufficiency of the evidence challenge in a juvenile proceeding is the same as in an adult proceeding.  (See *In re James B.* (2003) 109 Cal.App.4th 862, 872.)  We thus review the whole record in the light most favorable to the judgment and affirm the trial court's findings if they are supported by substantial evidence.  (*Ibid.*)  Substantial evidence is "evidence that is reasonable, credible, and of solid value" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357), and not based on "mere speculation" (*People v. Marshall* (1997) 15 Cal.4th 1, 35).

This standard is intentionally deferential.  We will affirm the judgment if "*any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt." (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.)

## B.      Substantial Evidence Supports the Conviction for Assault with a Deadly Weapon

### 1.      *Applicable Law*

Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (Pen. Code, § 240.)  Penal Code section 245, subdivision (a)(1), penalizes the commission of an assault "with a deadly weapon or instrument other than a firearm."  "Self-defense negates culpability for assaultive crimes . . . ."  (*People v. Adrian* (1982) 135 Cal.App.3d 335, 340.)

Self-defense is an absolute defense to an assault charge so long as the defendant (1) reasonably believed he or she were in imminent danger of suffering bodily injury, (2) reasonably

8

believed the immediate use of force was necessary to defend against the danger, and (3) used no more force than was reasonably necessary. (CALCRIM No. 3470; *People v. Lee* (2005) 131 Cal.App.4th 1413, 1427.)

If the defendant presents substantial evidence of self-defense, the prosecution has the burden of proving beyond a reasonable doubt that the defense does not apply. (*People v. Lee*, *supra*, 131 Cal.App.4th at p. 1429.) "Issues arising out of self-defense, including whether the circumstances would cause a reasonable person to perceive the necessity of defense, whether the defendant actually acted out of defense of himself, and whether the force used was excessive, are normally questions of fact for the trier of fact to resolve." (*People v. Clark* (1982) 130 Cal.App.3d 371, 378.)

2.   *Substantial Evidence Supports the Juvenile Court's Rejection of Isabella's Claim that She Acted in Self-defense*

Isabella claims the evidence in her case established all the elements of self-defense. The argument seems to be this. Once Diaz told Isabella "let's fight," Isabella had to run past her because the alley had only one exit, and Diaz was unlawfully blocking it. "Diaz could have let [Isabella] and [Alvarez] flee and could have contacted law enforcement." After Diaz chased Isabella and told her that she wanted to fight, Isabella "for the first time" stepped towards Diaz and took a "swing." According to Isabella, "Diaz had no legitimate reason to chase after" her, leaving Isabella with "no option but to defense herself."

We observe that the only evidence supporting Isabella's self-defense theory is her own testimony and the juvenile court did not find Isabella's testimony credible. The juvenile court

9

noted that Isabella "doesn't [even] remember why they went to this car." The court continued: "She's at that car, but she doesn't hear the window break or see her friend get into the car."

As an appellate court, we defer to the juvenile court's credibility determinations because the juvenile court, as the trier of fact, "is in a superior position to observe the demeanor of witnesses." (*In re George T.* (2004) 33 Cal.4th 620, 634.) And on substantial evidence review, we cannot substitute Isabella's version of events for the version accepted by the trier of fact: "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio, supra*, 43 Cal.4th at p. 358; accord, *People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) Isabella's briefing gives us no reason why we are not bound to apply this settled principle of appellate review here. Thus, we may not accept Isabella's self-defense story instead of the People's evidence that persuaded the trial court.

We also observe that whether Isabella's version of the events is true is irrelevant because she created the circumstances leading to the confrontation and therefore could not lawfully invoke self-defense.

Neither perfect nor imperfect self-defense may be invoked "by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 783, fn. 1.) "[A] quarrel provoked by a defendant, or a danger which he has voluntarily brought upon himself by his own misconduct, is not sufficient to support a reasonable

apprehension of imminent danger." (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1102, disapproved on another ground in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5.)

Rather, "when a defendant seeks or induces the quarrel which leads to the necessity for killing his adversary, the right to stand his ground is not immediately available to him, but, instead, he must first decline to carry on the affray and must honestly endeavor to escape from it." (*People v. Holt* (1944) 25 Cal.2d 59, 66.) The wrongful conduct sufficient to deny a defendant the right of self-defense need not be a physical assault but can arise from the creation by the defendant of "an atmosphere of antagonism that might naturally lead to physical combat if . . . continued." (*Id.* at p. 67.)

Isabella admitted that she was acting as a look out to facilitate the burglary of a parked car. She admitted she was armed with a box cutter. The assault occurred after Diaz, unarmed, saw what was happening and tried to chase off Isabella and Alvarez. Self-defense is not available to justify Isabella's actions under these circumstances, which she herself created. (See *People v. Valencia* (2008) 43 Cal.4th 268, 288 [" 'the ordinary self-defense doctrine—applicable when a defendant *reasonably* believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified' "].)

Moreover, even if acting in self-defense, Isabella was entitled to use only that force that was reasonable under the circumstances. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.) The use of excessive force negates any claim of self-defense.

11

(*People v. Hardin* (2000) 85 Cal.App.4th 625, 629-630.)  Here, because Isabella swung a blade at Diaz who was unarmed and did not physically or verbally threaten Isabella, her attempt to cut Diaz would be excessive even if the defense of self-defense applied, which it does not.  (See, e.g., *id*. at p. 633 [absent a reasonable "fear of great bodily harm . . . there is no cause for the exaction of a human life"].)

## C.      Penal Code Section 654 Does Not Apply

### 1.      *Applicable Law*

Penal Code section 654 prohibits punishment for multiple crimes arising from a single indivisible course of conduct.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)  Penal Code section 654's applicability "turns on the defendant's objective in violating" multiple statutory provisions rather than temporal proximity.  (*People v. Britt* (2004) 32 Cal.4th 944, 952, italics omitted.)  If all the crimes for which the defendant was convicted were merely incidental to or were the means of accomplishing or facilitating one objective, he or she may be punished only once.  (*Ibid*.)  However, multiple punishment is proper if the defendant entertained multiple independent criminal objectives.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Penal Code section 654's applicability in a given case is a question of fact for the trial court.  As such, we review that determination solely to determine if it is supported by substantial evidence.  (*People v. Jackson* (2016) 1 Cal.5th 269, 354; see also *People v. Saffle* (1992) 4 Cal.App.4th 434, 438 ["The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial"].)

12

Where, as here, a juvenile court orders a minor removed from the custody of parents or guardians, it must specify a maximum period of confinement that is no longer the maximum term that could be imposed on an adult for the same offenses. (§ 726, subd. (d).)  Penal Code section 654's prohibition against multiple punishment applies to this determination.  (*In re Billy M.* (1983) 139 Cal.App.3d 973, 978.)

2.    *Substantial Evidence Supports the Court's Determination Penal Code Section 654 Does Not Apply*

Isabella argues that because Diaz interrupted a burglary that was in progress, the crime of burglary was incomplete.  "The assault only occurred because Diaz happened to interrupt the burglary of the vehicle, and [Isabella] chose a scare tactic to attempt to persuade Diaz to let them continue without being apprehended."  The crime of burglary was incomplete as a matter of law, Isabella argues, because she had not yet reached a place of temporary safety.  "The initial crime—the burglary of a vehicle—was still being consummated when [Isabella] committed the second offense of assault with a deadly weapon."

Isabella primarily relies upon *People v. Nunez* (2012) 210 Cal.App.4th 625, where the defendant escaped from a mental health facility and approached the victim who was sitting in a parked car.  The defendant was charged with carjacking and assault with a deadly weapon after he hit the victim's car window and screamed at him.  (*Id.* at p. 628.)  The victim opened his car door and pushed the defendant, and the defendant then swung a claw hammer and struck the victim's arm.  The defendant jumped into the vehicle and drove away.  (*Ibid.*)  In striking the deadly weapon enhancement, Division Six of this court found

13

that the assault with a deadly weapon and carjacking charges merge for purposes of sentencing because the defendant "wielded the hammer to take the car . . . . Nor was use of the hammer motivated by animus unrelated to the taking of the automobile." (*Id.* at p. 630.) The two crimes were committed close in time, and the attack on the victim did not occur after the defendant " 'ha[d] consummated the purpose of his original crime.' " (*Ibid.*, quoting *People v. Williams* (1966) 244 Cal.App.2d 658, 663.)

We reject Isabella's reliance upon *Nunez* because it relies upon a false factual premise: that Isabella was still in the process of burglarizing Diaz's vehicle when she assaulted Diaz. By Isabella's own testimony, she and Alvarez decided to flee after Diaz refused to back down. It was only after they gave up trying to burgle the vehicle and decided to escape that she assaulted Diaz with a deadly weapon.

These facts are unlike *Nunez* where the defendant struck the victim with a hammer immediately after he got the victim out of the vehicle. (*People v. Nunez, supra*, 210 Cal.App.4h at p. 628.)

Instead, we find a stronger analogy lies to the facts of *People v. Wynn* (2010) 184 Cal.App.4th 1210, where the defendant walked out of a store with a carton of cigarettes and was then confronted by a security guard. The defendant threw down the cigarettes and attacked the guard. The court found that the defendant's objective during the burglary was to obtain the cigarettes, but his objective during the assault was to avoid arrest. (*Id.* at p. 1216.)

As in *Wynn*, Isabella had the intent to burgle Diaz's car when she broke into her car. Isabella's intent changed when she realized that Diaz would not back down and was determined that

Isabella be arrested.  So Isabella fled.  Indeed, she fled out of the alley onto a nearby street.

Isabella herself created this situation.  When Diaz ultimately caught up to her, she could have accepted her fate and waited for the police to come.  Instead, she threatened to cut Diaz with a deadly weapon.

That gratuitous act of violence—separated in time and place from the substantive crime of burglary—is substantial evidence supporting the trial court's imposition of the deadly weapon enhancement in this case.

Isabella makes an additional argument that her assault with a deadly weapon charge must merge with the burglary.  She claims because the assault transpired before she reached a temporary place of safety, the crime of burglary was incomplete as a matter of law, and thus, the assault must merge.  (See, e.g., *People v. Wilkins* (2013) 56 Cal.4th 333, 341 [discussing the relevance of reaching a place of temporary safety to the crimes of robbery and burglary].)

We reject this argument for two reasons.  First, Isabella makes this argument for the first time in her reply brief where she cites *People v. Bodely* (1995) 32 Cal.App.4th 311, 313 for the proposition that the crime of burglary necessarily includes a period of "immediate escape from the scene of [the] crime." Although her opening brief does refer to "temporary safety," it does so only once and in this single sentence:  "Moreover, the assault transpired while the burglary was still occurring, prior to [Isabella] and [Alvarez] reaching a place of temporary safety, and thus had temporal proximity, as in *Nunez*." This reference to "a place of temporary safety" in her opening brief is unaided by any legal citation establishing why any assault with a deadly weapon

15

committed while a burglary is being pursued—no matter how far away from the burglary—will always merge with the burglary under Penal Code section 654 as a matter law.  The Attorney General was given no opportunity to respond to this argument because it was made for the first time in Isabella's reply brief.  The single reference to "temporary safety" in her opening brief was insufficient to alert the Attorney General to the argument she develops for the first time in her reply.  Because we do not consider arguments raised for the first time in a reply brief, this argument is not properly before us.  (See *Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal.App.4th 1441, 1461, fn. 10.)

Even if we were inclined to respond to this untimely argument, we would also reject it.  It is premised upon the assumption that the assault with a deadly weapon charge is limited to the first instance in which Isabella brandished her box cutter when Diaz initially encountered the pair.  This is unsupported by the record.  After Diaz chased Isabella out of the alley into another street Isabella took a swing at Diaz with the box cutter.  We need not decide whether there were one or two assaults with a deadly weapon.  We are here reviewing solely for substantial evidence, and accordingly must indulge every inference to support the judgment.

16

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED


SINANIAN, J.*


We concur:



CHANEY, J.



BENDIX, Acting P. J.

---

&ast; Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.