[No. B235203. Second Dist., Div. Six. Oct. 25, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE NUNEZ, Defendant and Appellant.

## Counsel

Stephen P. Lipson, Public Defender, and Paul Drevenstedt, Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**YEGAN, J.**—This appeal concerns the *M'Naghten* insanity test (*M'Naghten's Case* (1843) 10 Clark & Fin. 200, 210 [8 Eng. Rep. 718, 722]) and the Legislature's proscription against multiple punishment as specified in Penal Code section 654.[1] This is an intersection that legal scholars may find interesting. If a defendant has been convicted of multiple offenses but was legally insane at the time of the offenses, how does a sentencing judge or an appellate court determine his "intent and objective" in setting a maximum period of potential confinement? Such a defendant is incapable of knowing or understanding the nature and quality of his act, or if he did know or understand, he cannot distinguish right from wrong. (See *People v. Skinner* (1985) 39 Cal.3d 765 [217 Cal.Rptr. 685, 704 P.2d 752]; see also *Clark v. Arizona* (2006) 548 U.S. 735, 747 [165 L.Ed.2d 842, 858–859, 126 S.Ct. 2709].) But such a defendant may still have an "intent and objective." It is just a little more difficult to ascertain.

Section 654 jurisprudence speaks in terms of the "intent and objective of the actor." (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507 [98 Cal.Rptr.3d 108, 213 P.3d 647], italics omitted.) This indicates that the actor's "subjective" intent is the touchstone for the multiple punishment inquiry.[2] We question whether a sentencing court, an appellate court, or even a forensic psychiatrist or psychologist can, in reality, reliably determine the subjective intent of an insane person. We nevertheless attempt to do so.

---

[1] All undesignated statutory references are to the Penal Code.

[2] Our Supreme Court has recently debated the continuing validity of the traditional section 654 inquiry. (See *People v. Correa* (2012) 54 Cal.4th 331 [142 Cal.Rptr.3d 546, 278 P.3d 809]; *People v. Jones* (2012) 54 Cal.4th 350 [142 Cal.Rptr.3d 561, 278 P.3d 821].) But whatever "fine tuning" may be in order, the basic inquiry remains.

Jose Nunez appeals from an order committing him to Patton State Hospital for a maximum period of 17 years (§ 1026.5, subd. (a)) after he was convicted of carjacking (count 1; § 215, subd. (a)) and assault with a deadly weapon (ADW; count 2; § 245, subd. (a)(1)) with weapon use and great bodily injury (GBI) enhancements (§ 12022, subd. (b)(2); former § 12022.7, subd. (a)). The jury found that appellant was insane when he committed the offenses. (§ 1026, subd. (a).) The trial court, in calculating the maximum period of confinement, computed the maximum sentence as follows: 15 years on count 1 for carjacking and the GBI and weapon use enhancements; plus a consecutive two-year term on count 2 for ADW and a GBI enhancement. We conclude that section 654 limits the maximum confinement period to 15 years.

On March 3, 2010, appellant was admitted to a mental health inpatient facility at the Ventura County Medical Center pursuant to Welfare and Institutions Code section 5150. Appellant escaped the next day, hit Anthony Perez (hereafter victim) with a hammer outside a convalescent home, and took his Grand Cherokee Jeep. Appellant was arrested hours later after he "rolled" the Jeep on Highway 101 near Santa Maria.

Victim testified that he parked outside the Glenwood Care Center and was sorting out his mother's medication when appellant "slammed" the passenger window and screamed at him. Victim had never seen appellant before and decided to "deal with him." He opened the car door and pushed appellant back a couple of feet. Appellant swung a claw hammer at victim, striking him on the forearm and right hand. Victim lunged at appellant but missed. Appellant got into the Jeep and drove away.

Doctor Joel Leifer, a court-appointed psychologist, testified that appellant suffered from schizophrenia and heard voices that people were trying to kill him. "One voice was telling him, 'Take the car, take the car.' And another voice was telling him, 'Get in the car, get in the car.' " Appellant was "flailing and reacting for the . . . sole purpose of escaping."

### Trial Court Ruling

The trial court ruled that the ADW was not incidental to the carjacking for section 654 purposes. It said: "What happened is that he banged on the window with a hammer and the victim got out of the car . . . . [Appellant] could have taken the car at that point by simply getting in and leaving, but he chose, instead, to smash the victim with a hammer in the head and in the arm." We question the premise of the trial court's reasoning. It is, at the very

least, a debatable proposition that an insane person can make a rational choice. As we shall explain, this ruling is at variance with the uncontradicted evidence. Moreover, the superior court has a duty to follow California Supreme Court precedent, i.e., *People v. Logan* (1953) 41 Cal.2d 279 [260 P.2d 20]. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People v. Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232].)

## *Section 654*

Where a defendant is found not guilty by reason of insanity, "the trial court computes the maximum sentence, then imposes that time period as the maximum period of confinement pursuant to section 1026.5, subdivision (a)." (*People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1238–1239 [36 Cal.Rptr.3d 719].)[3] Section 654, which bars multiple punishment for an indivisible course of conduct, applies in calculating the maximum confinement period. (*Hernandez*, at p. 1237; 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2011 supp.) Criminal Trial, § 692, p. 480.) " 'Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Rodriguez, supra*, 47 Cal.4th at p. 507.)

## People v. Logan *and Temporal Proximity*

The Attorney General argues, consistent with the trial court's views, that section 654 does not apply because a defendant can commit a carjacking without committing an ADW. But, that is not what happened here. We reject the argument because the ADW was the sole means of committing the carjacking. This course of criminal conduct was indivisible and the two crimes were committed so close in time that they were contemporaneous if not simultaneous. In *People v. Logan, supra*, 41 Cal.2d 279, 290 the

---

[3] Section 1026.5, subdivision (a)(1) states in pertinent part: "In the case of any person committed to a state hospital or other treatment facility pursuant to Section 1026 . . . , the court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer than the maximum term of commitment . . . . For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits . . . ."

defendant struck the victim with a baseball bat in order to take her purse. The Supreme Court held that the defendant could not be punished for both assault and robbery because the assault was committed to obtain possession of the purse. The facts and circumstances of the instant case, striking the victim with a hammer in order to take the car, are not "fairly distinguishable" from those in *Logan*. The trial court was required to follow it. (*People v. Triggs, supra*, 8 Cal.3d at p. 884.)

■ Temporal proximity, or the lack of it, can be a relevant consideration in determining the divisibility of a course of conduct. In *People v. Finney* (2012) 204 Cal.App.4th 1034, 1038 [139 Cal.Rptr.3d 484], the defendant beat the victim and fled. He returned to the scene 30 minutes after the initial attack and inflicted another beating. We held that the second beating was a separate and distinct offense for section 654 purposes and could be separately punished. Here, by contrast, there was no time interval at all. The hammer use and taking of the car were contemporaneous if not simultaneous.

## Other Theoretical Reasons for the ADW

■ Nevertheless, even if the events were contemporaneous a defendant who has multiple "intents and objectives" may suffer multiple punishments without offending section 654. But, again, that is not what happened here. It is apparent that appellant wielded the hammer to take the car. It is equally apparent the victim was not a "shrinking violet." That is to say, he was not going to peacefully surrender his car. Use of the hammer was not a "gratuitous act of violence" or an "afterthought." (*People v. Williams* (1966) 244 Cal.App.2d 658, 662–663 [53 Cal.Rptr. 392].) Nor was use of the hammer motivated by animus unrelated to the taking of the automobile. That is to say, there was no needless and vicious maiming of the victim after the defendant ". . . ha[d] consummated the purpose of his original crime." (*Id.*, at p. 663.)

## Conclusion

■ Appellant was not a "wild beast" or a "drooling idiot" at the time he committed the offenses. (*People v. Skinner, supra*, 39 Cal.3d at p. 777.) But whether or not he was capable of forming criminal intent, his actions show that his use of the hammer was "incidental" to the carjacking, i.e., a means to taking the car. He cannot be separately punished therefor.

The commitment order is modified to show that the maximum period of confinement is 15 years. The clerk of this court is directed to forward a

certified copy of this opinion to Patton State Hospital. The judgment as modified is affirmed.

Gilbert, P. J., and Perren, J., concurred.