Filed 8/12/19

CERTIFIED <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DOUGLAS JEREMIAH STOUT,<br><br>　　　　Defendant and Appellant. | C085360<br><br>(Super. Ct. Nos. 16F2193,<br>　16F2518, 16F4167) |

　　　　APPEAL from a judgment of the Superior Court of Shasta County, Daniel E. Flynn, Judge.  Reversed in part and affirmed in part.

　　　　Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein, Keith P. Sager, Deputy Attorney General, for Plaintiff and Respondent.


　　　　In case No. 16F4167, a jury convicted defendant Douglas Jeremiah Stout of attempted carjacking, attempted kidnapping, criminal threats, carrying a loaded firearm with the intent to commit a felony, possession of a firearm by a felon, assault with a semiautomatic firearm, and possession of ammunition by a felon.  The jury also found

---

*  Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, IV, V, VI, and VII.

1

true allegations that defendant personally used a firearm in the commission of specified felonies. The trial court found true prior prison term and on-bail enhancement allegations and imposed a total state prison term of 35 years 4 months, encompassing three different cases.

Defendant now contends (1) the trial court erred in instructing the jury that the prosecution did not need to prove the exact dates of the crimes, (2) his count 8 conviction for possession of a firearm by a felon must be reversed because he cannot be convicted of two such offenses where there was no break in possession, (3) the firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony must be stricken, (4) the trial court should have stayed sentence for attempted carjacking, and (5) the trial court miscalculated defendant's sentence by two months. In supplemental briefing, defendant argues (6) the matter should be remanded for the trial court to exercise its discretion whether to strike the firearm use enhancements pursuant to Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill 620).

In the published portion of this opinion, we agree with defendant and the Attorney General that the firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony must be stricken. Penal Code section 25800, subdivision (a)[1] punishes the passive or static act of carrying a firearm with the intent to commit a felony; the offense is complete when the firearm is carried with that intent. The fact that defendant used the firearm to commit other felonies does not mean he used it in the commission of the section 25800 felony.

In the unpublished portion of the opinion, we conclude the asserted instructional error was harmless, one of defendant's convictions for possession of a firearm by a felon must be reversed, we will remand to allow the trial court to exercise its discretion

---

[1] Undesignated statutory references are to the Penal Code.

whether to strike the firearm use enhancements pursuant to Senate Bill 620, and we will direct the trial court on remand to stay sentence on the count 1 conviction for attempted carjacking and its associated firearm use enhancement, unless the trial court decides to strike the enhancement. We also identify a clerical error in the abstract of judgment. Because the trial court must recalculate the aggregate sentence on remand (*People v. Buycks* (2018) 5 Cal.5th 857, 893), we do not address defendant's fifth contention that the trial court miscalculated defendant's sentence.

BACKGROUND

A.N. testified that around 1:00 pm on June 28, 2016, she drove to a shopping mall in Redding to pick up medication at a pharmacy. Parking near the store entrance, A.N. saw a man (defendant) standing by the entrance and talking on a cell phone. She noticed his teeth were decayed. She passed defendant on her way into the store.

After getting her prescription, A.N. walked to her car. Feeling that someone was standing very close behind her, she turned and saw defendant less than a foot away. She asked him what he was doing, and he answered: "Get in your car or I will fucking kill you." He was pointing a black and silver semiautomatic handgun at her stomach. Fearing for her life, she said "The fuck you will," and pushed him away with one hand, causing him to stumble backward. Defendant departed east toward Water Works Park.

A.N. called 911. An officer took down her description of the suspect, which included his "poor teeth." The next day, she spoke to an investigator and identified defendant immediately from a photo lineup, calling her identification "very, very, very certain"; she mentioned that he had been wearing "cool-guy sunglasses" with amber lenses. She later identified him in a different photo lineup a defense investigator showed her.

In the early afternoon on June 28, Misty M. came home for lunch to her house near Water Works Park. A red Neon in front of her car slowed down as it approached her driveway. A man, later identified as defendant, ran down the driveway and jumped into

3

the Neon. Thinking her house had been burglarized, Misty M. followed the Neon. She pulled alongside and slightly in front of the Neon to block it and repeatedly asked, "What the fuck are you doing in my driveway?" The driver said they were there to see an individual named Dave who lived in another house on the property. Misty M. saw defendant in the passenger seat. She photographed the Neon's license plate, the driver, and defendant before moving her car to let them leave.

Misty M. flagged down Redding Police Officer Rex Berry who had been dispatched to investigate the incident involving A.N. Misty M. described the incident at her premises and e-mailed Officer Berry her photographs of the Neon, along with a link to a photo of defendant. On June 29, officers spotted defendant and arrested him. A body search found a loaded silver and black semiautomatic handgun in his left shorts pocket.

Defendant did not testify at trial. He presented an alibi defense through Dannoll G., the manager of a sporting goods store in Redding.

According to Dannoll G., he encountered defendant (whom he might have seen in his store, but did not know well) at a barbecue event on June 28 or June 29; he was "pretty sure" it was the 28th. Six or seven people, including himself and defendant, were at the barbecue.

Around 1:00 or 2:00 p.m., they ended the barbecue because "thunderheads" were coming in. They went rafting and kayaking on the river. Dannoll G. remembered defendant was there in part because he was inept at kayaking and needed help. A thunderstorm, and possibly hail, hit them on the river. Defendant was with them when they got off the river, but Dannoll G. was not sure whether defendant returned to town with them.

Later, defendant called Dannoll G. more than once at work and asked if he remembered that defendant was with them that day. Dannoll G. originally answered that he remembered defendant was with them, but did not remember the date. Defendant also

4

said he had a GMC truck available if Dannoll G. was looking for one; Dannoll G. assumed defendant was trying to sell the truck, not to offer it as a gift. Dannoll G. said he had paperwork which he had told investigators would confirm the date, but he did not bring it to court.

In rebuttal, Redding Police Detective Paul Slagle testified that when he interviewed defendant on June 29, defendant never mentioned seeing Dannoll G., attending a barbecue, going down the river, or getting rained on the day before. Detective Slagle said defendant claimed he was at a friend's house but did not provide specific timelines and Slagle did not believe defendant mentioned a friend's name. The parties stipulated that Detective Slagle had researched the local weather on June 28. The weather service showed it had been 104 degrees and sunny, with no rain or hail anywhere in the area. Shelby C., a friend of defendant, testified that she picked him up and gave him rides several times on June 28, but did not recall picking him up near the barbecue location or the river.

In case No. 16F4167, the jury convicted defendant of attempted carjacking (§§ 215, subd. (a)/664 -- count 1), attempted kidnapping (§§ 207, subd. (a)/664 -- count 2), criminal threats (§ 422 -- count 3), carrying a loaded firearm with the intent to commit a felony (§ 25800 -- count 4), possession of a firearm by a felon (§ 29800, subd. (a) -- counts 5 and 8), assault with a semiautomatic firearm (§ 245, subd. (b) -- count 6), and possession of ammunition by a felon (§ 30305, subd. (a)(1) -- count 7). The jury also found true allegations that defendant personally used a firearm in the commission of the felonies charged in counts 1, 2, 3, 4, and 6 (§§ 12022.5, subd. (a), 12022.53, subd. (b)),[2]

---

[2] The section 12022.53, subdivision (b) allegation, which provides for a 10-year enhancement for gun use in the commission of specified felonies and attempted felonies, was pleaded as to counts 1, 2, and 3. The section 12022.5, subdivision (a) allegation, which provides for a range of enhancements from three to 10 years for gun use in the commission of any felony or attempted felony, was pleaded as to counts 1, 2, 3, 4, and 6.

5

and the trial court found true allegations as to all counts that defendant had served five prior prison terms (§ 667.5, subd. (b)) and had committed the current offenses while released on bail in case Nos. 16F2193 and 16F2518 (§ 12022.1).[3]

The trial court imposed a total state prison term of 35 years 4 months, encompassing all three cases. As to case No. 16F4167, the sentence consisted of the following: on the count 6 conviction for assault with a semiautomatic firearm, the upper term of nine years, plus 10 years for the firearm use enhancement (§ 12022.5, subd. (a)); on the count 1 conviction for attempted carjacking, 10 months (one-third the middle term), plus three years four months for the firearm use enhancement (one-third the term); on the count 5 conviction for possession of a firearm by a felon, eight months (one-third the middle term); on the count 8 conviction for possession of a firearm by a felon, eight months (one-third the middle term); five years for the prior prison term enhancements; and four years for the on-bail enhancements. In case No. 16F2518, the trial court imposed eight months (one-third the middle term) for possession of a billy club, and in case No. 16F2193, the trial court imposed one year (one-third the middle term) for receiving a stolen vehicle with a prior conviction. All sentences were run consecutive. The trial court stayed the remaining counts and allegations in case No. 14F4167 pursuant to section 654.

_____

As to count 3, the section 12022.53 allegation was erroneous because the statute does not cover the offense of making criminal threats. The trial court struck the jury's finding on that allegation at sentencing.

[3] Defendant had already entered pleas in both cases. In case No. 16F2193, defendant pleaded no contest to receiving a stolen motor vehicle with a prior (§§ 496d, subd. (a)/666.5) and admitted one prior prison term, in return for the dismissal of a charge of theft of a motor vehicle with a prior and of two prior prison term enhancements. In case No. 16F2518, defendant pleaded no contest to possession of a billy club (§ 22210) in return for the dismissal of five prior prison term enhancements and an on-bail enhancement.

DISCUSSION

I

Defendant contends the trial court erred in instructing the jury pursuant to CALCRIM No. 207 that the prosecution need not prove the exact date on which the crimes were committed, even though he raised an alibi defense. We conclude the error was harmless beyond a reasonable doubt. The totality of the circumstances made clear the prosecution had to prove the crimes were committed on the date for which defendant offered his alibi, and in any event the jury could not reasonably have credited the alibi evidence.

At the jury instruction conference, after the trial court noted the court and counsel "had the necessary preliminary discussions about the proposed jury instructions," the trial court asked if counsel objected to any instruction the court intended to give or if the court had refused any instruction they wanted. Both counsel said no.

The trial court gave CALCRIM No. 207 as follows: "It is alleged that the crimes occurred on or about June 28th and June 29th, 2016. The People are not required to prove that the crimes took place exactly on those days but only that they happened reasonably close to those days." The trial court also gave CALCRIM No. 3400 as follows: "The People must prove that the defendant committed the crimes charged. The defendant contends he did not commit the crimes charged on June 28, 2016 and that he was somewhere else when these crimes were committed. The People must prove that the defendant was present and committed the crimes with which he is charged. The defendant does not need to prove he was elsewhere at the time of the crime. [¶] If you have a reasonable doubt about whether the defendant was present when the crime was committed, you must find him not guilty."

In argument, both counsel stated repeatedly that the offenses charged in counts 1 through 6 were committed on June 28, and those charged in counts 7 and 8 (which

7

defendant conceded) were committed on the next day. Both counsel also stressed that defendant's defense to counts 1 through 6 was alibi.

The parties agree CALCRIM No. 207 should not have been given on these facts, and we agree with the parties. The trial court should not instruct the jury that the prosecution does not have to prove the exact date of the crime when the evidence shows the crime was committed at a specific time and place and the defendant has presented evidence he was elsewhere on that date. (*People v. Jennings* (1991) 53 Cal.3d 334, 358-359; CALCRIM No. 207.)

The Attorney General asserts defendant's claim of error is forfeited because he did not object below and the instruction at issue is a correct statement of law. (Cf. *People v. Lee* (2011) 51 Cal.4th 620, 638 [trial court has no duty to revise or improve on accurate statement of law sua sponte].) We disagree. CALCRIM No. 207, though generally correct, did not accurately state the law that applied in this case. Considered in isolation, it could have misled the jury on a point critical to the defense. Therefore we also agree with defendant that his claim is not forfeited. (§ 1259 [instructional error affecting the defendant's substantial rights may be raised first on appeal].)

On the merits, however, defendant's claim fails because the error was harmless beyond a reasonable doubt. The evidence established conclusively and without dispute that the conduct charged in counts 1 through 6 occurred on June 28. The prosecutor in effect told the jury to hold him to the burden of proving that defendant committed those acts on that date. CALCRIM No. 3400 made the same point: if the jury had a reasonable doubt that defendant was present on June 28, when the crimes were committed, it must acquit. The jury could not have failed to understand that to convict defendant of those crimes it must reject his alibi defense.

Finally, the evidence establishing defendant's guilt was strong, and his alibi was weak. The victim and Misty M. identified him with certainty. When interviewed just after his arrest he failed to mention seeing Dannoll G., attending a barbecue, going down

8

the river, or getting rained on the day before. His alibi witness's recollection of the date of the barbecue and river trip was uncorroborated and apparently suggested by defendant in his after-the-fact phone calls. And the witness's account of the weather on June 28 was refuted by the evidence.

Under the circumstances, the instructional error was harmless beyond a reasonable doubt.

## II

Defendant next contends his count 8 conviction for possession of a firearm by a felon on June 29 must be reversed because the offense is a continuing one, and there was no evidence of a break between his possession of a firearm on June 28 when he brandished it at A.N. (count 5) and his possession of the same firearm the next day when he was arrested. The Attorney General agrees that one of the two convictions of this offense must be reversed, and so do we.

The offense defined in section 29800, subdivision (a)(1) is committed when a felon "owns, purchases, receives, or has in his possession or under custody or control any firearm." The offense is a continuous one because it is complete as soon as the elements are met. (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 525-526 & fn. 1; accord, *People v. Mason* (2014) 232 Cal.App.4th 355, 365 (*Mason*).) Where an offense is continuing, only one violation occurs even if the conduct extends over an indefinite period. (*Mason,* at p. 365.) Thus, if evidence shows a felon possessed a firearm on different dates but does not show the possession was other than continuous during that period, the conduct constitutes a single continuing offense that does not conclude until the possession ceases. (*Id.* at pp. 366-367.)

A.N. described defendant's firearm as a silver and black semiautomatic handgun, and so did the arresting officers. There is no evidence that defendant ceased to possess that gun at any time during the period from June 28 to June 29 or that he possessed two different guns on those dates. However, the trial court sentenced on both counts

9

because count 8 was "a separate date, separate time, separate circumstances [from count 5] . . . albeit the same firearm." That was error.

Under the logic of *Mason*, *supra*, 234 Cal.App.4th at pages 366-367, one of defendant's convictions for possession of a firearm by a felon must be reversed. We reverse the conviction on count 8.

III

Defendant argues the firearm use enhancement (§ 12022.5) on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony (§ 25800) must be stricken. The Attorney General agrees, and so do we.

Section 25800, subdivision (a) provides that "[e]very person who carries a loaded firearm with the intent to commit a felony is guilty of armed criminal action." The section 12022.5, subdivision (a) enhancement applies to "any person who personally uses a firearm in the commission of a felony or attempted felony . . . unless use of a firearm is an element of that offense." The question presented is whether defendant's act of carrying a loaded firearm with intent to commit a felony involved the use of the firearm in the commission of the armed criminal action felony. By analogy to other appellate decisions construing similar statutes, we conclude it did not.

A gun use occurs in the commission of an offense if the use objectively facilitates the offense. (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1495.) In the case *In re Pritchett* (1994) 26 Cal.App.4th 1754, 1757 (*Pritchett*), a jury found defendant Pritchett guilty of felony possession of a short-barreled shotgun (former § 12020, subd. (a)), and also found true a section 12022.5, subdivision (a) enhancement allegation that he personally used a firearm in the commission of the felony. The enhancement was based on Pritchett taking a sawed-off shotgun from a dresser drawer and striking his former girlfriend on the head with the barrel of the gun. (*Pritchett,* at p. 1756.) The appellate court directed the trial court to strike the enhancement (*id.* at p. 1758), reasoning: "Although Pritchett used the shotgun as a club during his possession of it, he did not use

10

it 'in the commission' of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession. [Fn. omitted.] [¶] At most, Pritchett used the shotgun as an instrument of possession, or made 'possessory use' of the shotgun, in the commission of his crime of possession. However, if possessory use is a legally cognizable concept, it does not support a use enhancement because possessory use is an element of the crime of possession of a deadly weapon." (*Id.* at p. 1757, italics omitted.)

Almost a decade later, *People v. Arzate* (2003) 114 Cal.App.4th 390 (*Arzate*) involved a defendant who used a gun hidden in his car to attempt to murder a police officer during a traffic stop. (*Id.* at pp. 392-393.) Among other things, the jury found Arzate guilty of carrying a concealable and concealed firearm in his vehicle (former § 12025, subd. (a)(1)), and also found true an enhancement allegation that he personally used a firearm as to that offense (stayed by the trial court). (*Arzate,* at pp. 398-399.) The appellate court held: "[T]he offense of carrying a concealed firearm in a vehicle is committed with the single passive act of carrying the firearm in a concealed fashion in a vehicle. . . . [¶] . . . [¶] In the factual context of this case the gun use . . . [was] not committed in the commission of the static offense of carrying a concealed weapon in a vehicle. Accordingly, the jury's true findings and the gun use enhancement imposed but stayed on the concealed firearm count must be stricken." (*Id.* at pp. 400-401, fns. & italics omitted.)

Like the provisions construed in *Pritchett* and *Arzate*, section 25800, subdivision (a) punishes the passive or static act of carrying a firearm with the intent to commit a felony, and the offense is complete when the firearm is carried with that intent. The fact that defendant used the firearm to commit attempted carjacking, attempted kidnapping, criminal threats, and assault with a semiautomatic firearm does not mean he used it in the commission of the section 25800 felony. (See *Arzate, supra,* 114 Cal.App.4th at pp. 400-401; *Pritchett, supra*, 26 Cal.App.4th at p. 1757.) His use

11

of the firearm did not objectively facilitate carrying a loaded firearm with the intent to commit a felony. We will strike the section 12022.5 firearm use enhancement on count 4.

IV

Defendant claims his sentence on the count 1 conviction for attempted carjacking should have been stayed pursuant to section 654 because the assault with a semiautomatic firearm (count 6) was the means by which he attempted the carjacking. The Attorney General agrees, and so do we.

Section 654 prohibits punishment for multiple crimes arising from a single indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1208.) Whether a criminal course of conduct is divisible depends on the defendant's intent and objective. If all of his acts were pursuant to a single intent and objective, he may be punished only once. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) A defendant's intent and objective are factual questions for the trial court, and the court's determination will be upheld if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731; *People v. Bui* (2011) 192 Cal.App.4th 1002, 1015.)

At sentencing, the prosecutor argued counts 1 and 6 were separate offenses for section 654 purposes: "I think there is [*sic*] separate actions based on [defendant]'s actions. The mere fact of pointing the loaded weapon at [A.N.] -- because the jury did find that he had a loaded weapon . . . . [¶] . . . that's the [assault with a semiautomatic firearm]. . . . That crime has been committed. Once he starts threatening her, pushing her towards the car with that gun, separate and distinct actions on the part of [defendant], and it's a different crime and can be punished separately." The prosecutor conceded, however, that he could see how a court might say section 654 applied. Defense counsel argued for application of section 654.

The trial court agreed some of the counts were subject to section 654, but not as to the assault with a firearm. The trial court stated: "I think [the prosecutor]'s assessment

12

of the situation is correct.  That the [assault with a semiautomatic firearm] was completed when the gun was produced and pointed at the victim, loaded and ready to use as an offensive weapon.  The [attempted carjacking was] an additional offense . . . .  But it went beyond what was required to commit the first offense, although done in a relatively short order.”

The trial court’s analysis was erroneous for the reasons stated in *People v. Nunez* (2012) 210 Cal.App.4th 625 (*Nunez*).  There, the defendant was convicted of assault with a deadly weapon and carjacking, based on the evidence that the victim was sitting in his parked Jeep when the defendant “ ‘slammed’ ” the passenger-side window and screamed at him; the victim got out and pushed the defendant back; the defendant swung a claw hammer at the victim, striking him in two places; the victim lunged at the defendant but missed; and the defendant got into the Jeep and drove away.  (*Id.* at p. 628.)  The trial court ruled section 654 did not apply because once the victim exited the Jeep, the defendant could have taken it without physically attacking the victim.  (*Nunez*, at p. 628.)  The appellate court reversed.  “[T]he [assault] was the sole means of committing the carjacking.  This course of criminal conduct was indivisible and the two crimes were committed so close in time that they were contemporaneous if not simultaneous.”  (*Id.* at p. 629.)  “It is apparent that appellant wielded the hammer to take the car.  It is equally apparent that the victim . . . was not going to peacefully surrender his car.  Use of the hammer was not a ‘gratuitous act of violence’ or an ‘afterthought.’  [Citation.]  Nor was use of the hammer motivated by animus unrelated to the taking of the automobile.” (*Id.* at p. 630.)

Here, defendant’s acts of assault with a firearm and attempted carjacking were “contemporaneous if not simultaneous.”  (*Nunez, supra*, 210 Cal.App.4th at p. 629.) And the assault had no intent or objective “unrelated to the taking of the automobile” (*id.* at p. 630); rather, the intent and objective of the assault was to take the automobile.

13

Therefore, the trial court's finding that the acts did not form an indivisible course of conduct with a single intent and objective is not supported by substantial evidence.

On remand, the trial court is directed to stay sentence on the count 1 conviction for attempted carjacking and its associated firearm use enhancement, unless the trial court decides to strike the enhancement. (See Part VI.)

V

Defendant contends the trial court miscalculated his sentence by two months. Because the trial court will have to recalculate defendant's aggregate sentence on remand in a manner consistent with this opinion, we need not decide this contention.

VI

In supplemental briefing, defendant argues the matter should be remanded to allow the trial court to exercise its discretion whether to strike the firearm use enhancements pursuant to Senate Bill 620. The Attorney General agrees and we do too.

Before Senate Bill 620 took effect on January 1, 2018, trial courts had no discretion to strike or dismiss firearm use enhancements under sections 12022.5 and 12022.53. However, Senate Bill 620 amended those statutes to give trial courts that discretion in the interests of justice (Stats. 2017, ch. 682, §§ 1-2), and that change in law applies retroactively to all cases in which sentencing is not yet final. (*People v. Valenzuela* (2018) 23 Cal.App.5th 82, 87-88.)

We will remand the matter to allow the trial court to exercise its discretion with regard to the firearm use enhancements on counts 1 and 6.

VII

Our review of the record disclosed a clerical error in the abstract of judgment. Defendant was convicted on count 7 for possession of ammunition by a felon in violation of section 30305, subdivision (a)(1). The trial court orally imposed the middle term of two years on that count and then stayed the sentence pursuant to section 654. But the abstract of judgment incorrectly indicates a conviction on count 7 for assault with a

14

semiautomatic firearm in violation of section 245, subdivision (b). When the trial court recalculates the aggregate sentence on remand and prepares an amended abstract of judgment, it is directed to correct this clerical error in the abstract as well.

## DISPOSITION

Defendant's count 8 conviction for possession of a firearm by a felon is reversed, and the section 12022.5 firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony is stricken. The remaining convictions are affirmed. The matter is remanded to allow the trial court to exercise its discretion whether to strike the firearm use enhancements on counts 1 and 6. On remand, the trial court is directed to stay sentence on the count 1 conviction for attempted carjacking and its associated firearm use enhancement, unless the trial court decides to strike the enhancement. The trial court shall resentence defendant, prepare an amended and corrected abstract of judgment, and forward a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.


　　　　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　　　　MAURO, Acting P. J.



We concur:



　　　　/S/
DUARTE, J.



　　　　/S/
RENNER, J.

15