Filed 6/5/26  P. v. Bath CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARSON BATH,<br><br>    Defendant and Appellant. | 2d Crim. No. B343934<br>(Super. Ct. No. 2024010829)<br>(Ventura County) |

A jury convicted Carson Bath of criminal threats, battery, robbery, and assault with a deadly weapon after hearing evidence of two incidents involving separate victims.  Bath appeals the convictions contending the trial court improperly: 1) consolidated the two cases; 2) admitted e-mails and texts under Evidence Code section 1101, subdivision (b), and 3) punished him twice for the same criminal conduct in violation of Penal Code section 654.[1]

---

[1] All statutory references are to the Penal Code unless stated otherwise.

We agree that, under section 654, the trial court should not have punished Bath for both robbery (count 3) and assault with a deadly weapon (count 4). The case is remanded for resentencing with instructions for the court to stay the sentence on either count 3 or count 4. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

*Criminal threats and battery incident (case no. 2024010829)*

A.S. and Bath worked together at McDonald's from November 2023 to February 2024. A.S. sometimes supervised Bath. She saw "minor altercations" between Bath and his co-workers and believed he had an anger problem. On one occasion, Bath became upset with A.S. when she refused to give a co-worker a free meal. A.S., however, believed she and Bath were on good terms when he quit the job.

A week later, Bath called A.S.'s supervisor and threatened to kill A.S. and other employees if he ever encountered them. A.S. felt afraid when her supervisor told her about the threats because she had seen Bath lash out at her co-workers. He had also mentioned prior "issues with the law" and said he "was not scared of getting in trouble." Although she was afraid, A.S. did not report the threat to law enforcement.

In April 2024, A.S. saw Bath in a study room at the Oxnard Public Library. They made eye contact, but A.S. continued walking. A.S. heard the study room door open, heard footsteps behind her, and then heard Bath either call her name or say, "hey." She turned and came face to face with him. Bath spat in her face. The spittle hit A.S.'s left eye and some "fell" into her mouth. She described Bath's voice as "angry and frustrated." He looked agitated. When A.S. reached for her phone, Bath said he "was going to kill [her] if he ever saw [her] again." A.S. was scared. She

2

used her cell phone to record Bath as he walked away. In the video, he can be heard saying "kill you and people like you. You're lucky. Go back to flippin' your burgers." A.S. reported the threat to a library employee who called the police.

Oxnard Police Department Officer Charles Buttell met with A.S. at the library. Officer Buttell later described A.S. as visibly upset, scared, crying and "shaken." A.S. reported that Bath had spit on her and threatened her. Officer Buttell then found Bath, who was still at the library, and talked to him. Bath said A.S. and other co-workers bullied and harassed him when he worked at McDonald's. He told Officer Buttell that A.S. walked by him in the library and was "laughing at me and flipped me off." A.S. denied provoking or "flipping off" Bath. A pocketknife was found in Bath's pants pocket.

The People filed a felony complaint charging Bath with criminal threats (§ 422) and misdemeanor battery (§ 242).

### Robbery and Assault Incident (Case No. 2024020930)

J.B.L. sells food from a cart in Oxnard, using a bicycle-like horn to draw customers. On July 7, 2024, J.B.L. was honking his horn when Bath approached him. Bath came up "loudly and fast" while shouting "shut up, shut up." He grabbed J.B.L.'s wrist and took his horn. J.B.L. asked "why" in Spanish and reached out, signaling he wanted the horn back. Bath pulled out a switchblade knife and tried without success to open it. Bath struck J.B.L's arm with the knife handle, then, once the blade was released, tried to stab J.B.L. in the stomach. J.B.L. pulled back and avoided the blade. Bath then ran off with J.B.L.'s horn. J.B.L. said he was afraid during the robbery. Later, he could not identify Bath in a photo lineup or in court. Police arrested Bath on August 1, 2024. They found a black pocketknife on his person.

The People filed a felony complaint charging second degree robbery (§ 211) with a special allegation of personal use of a dangerous and deadly weapon (§ 12022, subd. (b)(1), assault with a deadly weapon (§ 245, subd. (a)(1), and an allegation that Bath committed the crimes while released on his own recognizance.

<u>*Trial*</u>

*Evidence Code section 1101, subdivision (b) evidence*

The People initially sought to admit seven prior uncharged acts to prove identity, intent, motive and common plan pursuant to Evidence Code section 1101, subdivision (b).  The trial court admitted evidence of two prior uncharged acts, specifically Bath's threatening e-mails to his apartment complex manager, E.G., and his threatening text messages to Rescue Mission manager, D.P.M.

*1. E-mails to E.G.*

Between December 2022 and February 2023, Bath e-mailed E.G., several times to complain about a food cart vendor using a "clown horn" in the area.

On December 24, 2022, Bath sent an e-mail with the subject line, "Clown-cart walking around the complex harassing residents with clown horn."  He wrote, "Hi I'm getting pissed the fuck off having to listen, every single day, to this idiot walk around the apt complex spamming his clown horn until he harasses people enough in their homes to come out of their apt and buy something from his shit cart."  He also warned E.G. that something needed to be done or he would "fuck this guy up."

Bath sent a second e-mail to E.G. on February 6, 2023, complaining about the food cart vendor and E.G.'s failure to act, this time referring to the vendor as a "Mexican."  On February 16, 2023, Bath sent another e-mail with the subject line, "Last Warning before Violence, Sheriffs Dept/911 called repeatedly."

4

Bath sent a final e-mail on February 18, 2023, to complain that E.G. was allowing the food cart vendor to disturb tenants. He used a racial slur to refer to the food cart vendor and said, "[redacted] with the horn walk around again. I'll probably eventually end up killing that guy on your property . . . ." E.G. contacted law enforcement to report the threatening e-mails.

### 2. Text messages to D.P.M.

D.P.M. met Bath while managing the Ventura County Rescue Mission shelter. In November 2023, D.P.M. temporarily banned Bath from the shelter due to his behavior. Bath threatened to stab D.P.M. in the neck. Then he sent D.P.M. a series of text messages threatening to stab "as many fucking kids and Christian kids as possible" and "shoot up a school of kids."

Bath accused D.P.M. of kicking him out of the shelter and making him sleep outside. He texted, "People like you make me want to go to shoot up a school and go around stabbing as many fucking kids as fucking possible. You kicked me out and made me sleep on the street, in the cold in the fucking cold and fucking concrete because of your delusional addicts staff that said I could switch beds."

Bath followed up with another text message to D.P.M., stating, "if you can't admit that you did any wrong to me I'm going to go around and stab a bunch of fucking Christian kids, why can't you just admit that you kicked me out after screaming at me?" He sent a final message stating, "maybe after I go stab a bunch of fucking children you'll understand you piece of shit I got permission from one of you to switch beds."

### 3. Consolidation and verdicts

The trial court granted the People's motion to consolidate the two cases, finding that they were "factually similar" and equally

strong. After trial, a jury convicted Bath of criminal threats (§ 422) and battery (§ 242) against A.S., and robbery (§ 211) and assault with force likely to produce great bodily injury (§ 245, subd. (a)(1) against J.B.L. The jury also found true the special allegation that Bath used a deadly or dangerous weapon when he robbed J.B.L. (§ 12022, subd. (b)(1).)

The trial court sentenced Bath to a prison term of four years eight months, but suspended execution of sentence. The court placed Bath on probation for 48 months and, among other terms and conditions, sentenced him to 329 days in county jail.

## DISCUSSION

### *Consolidation*

Bath contends consolidating the cases violated his due process rights and resulted in an unfair trial. We review the court's pretrial ruling for abuse of discretion. (*People v. Simon* (2016) 1 Cal.5th 98, 122-123 (*Simon*).) Then we examine the trial record to determine "whether events *after* the court's ruling" resulted in gross unfairness amounting to a violation of Bath's due process rights. (*People v. Merriman* (2014) 60 Cal.4th 1, 46 (*Merriman*).)

### *Standard of review for consolidation*

An accusatory pleading may charge two or more offenses if they are either " 'connected together in their commission' " or " 'of the same class.' " (§ 954; *People v. Soper* (2009) 45 Cal.4th 759, 771 (*Soper*).) The offenses may be charged "under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (§ 954.) For reasons of judicial efficiency, "consolidation or joinder of charged offenses 'is the course of action preferred by the law.' " (*Soper*, *supra*, at p. 772, quoting *Alcala v. Superior Court* (2008) 43

6

Cal.4th 1205, 1220 (*Alcala*); accord *People v. Westerfield* (2019) 6 Cal.5th 632, 689.)

Where the statutory requirements for joinder are met, a defendant must make a " 'clear showing of prejudice' " to establish that the trial court nevertheless abused its discretion in consolidating cases. (*Simon, supra*, 1 Cal.5th at pp. 122-123, quoting *People v. Mendoza* (2000) 24 Cal.4th 130, 160 (*Mendoza*).) "A court abuses its discretion when its rulings fall 'outside the bounds of reason.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 475.)

In noncapital cases, three factors guide the trial court in deciding whether to consolidate cases where the statutory requirements for joinder are met: " '(1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; [and] (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges . . . .' " (*People v. Anderson* (2018) 5 Cal.5th 372, 388-389, quoting *People v. O'Malley* (2016) 62 Cal.4th 944, 968.)

Even if the trial court's ruling was proper as a matter of state law, courts "will reverse the judgment if the defendant shows that joinder of the charges actually resulted in ' " 'gross unfairness' " ' amounting to a denial of due process." (*Simon, supra*, 1 Cal.5th at p. 123, quoting *Mendoza, supra*, 24 Cal.4th at p. 162.) In resolving such claims of prejudice, courts consider "whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness.' " (*Merriman, supra*, 60 Cal.4th at pp. 1, 46.)

*The trial court did not abuse its discretion in ordering consolidation*

7

"Assaultive crime[s] against the person" are " 'of the same class' " of crimes, and may, therefore, be consolidated under section 954.  (*People v. Rhoden* (1972) 6 Cal.3d 519, 524-525; accord *People v. Elliott* (2012) 53 Cal.4th 535, 551 [attempted murder, assault with a firearm, and robbery]; see also *People v. Walker* (1988) 47 Cal.3d 605, 622 [robbery, murder, and assault with intent to commit murder].)

Here, the consolidated charges – criminal threats, battery, robbery and assault with a deadly weapon – are of the same class of crimes because all involved assaultive conduct.  " '[C]rimes against persons' generally refers to '[a] category of criminal offenses in which the perpetrator uses or threatens to use force.' " (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 987].)

### 1. Cross-admissibility

Where charges meet the minimum statutory requirement for joinder, the defendant must make a clear showing of prejudice to establish that the trial court abused its discretion.  (*Alcala*, *supra*, 43 Cal.4th at p. 1220.)

" ' "[T]he first step in assessing whether a combined trial [would have been] prejudicial is to determine whether evidence of each of the joined charges would have been admissible, under Evidence Code [section] 1101, in separate trials on the others.  If so, any inference of prejudice is dispelled." ' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 948; see also *Merriman*, *supra*, 60 Cal.4th at p. 38.)

Evidence Code section 1101, subdivision (b) allows admission of other crimes evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

Here, the trial court asked about cross-admissibility under Evidence Code section 1101 and implicitly found that the evidence of the two separate incidents was cross-admissible. (*People v. Dove* (2004) 124 Cal.App.4th 1, 10-11 [A trial court's findings may be implied, where stating its reasons on the record is not legally mandated].)

The record supports the court's implicit finding. The two incidents were cross-admissible to prove identity, common plan, motive and intent. In a hypothetical separate trial of the robbery committed against J.B.L., the People properly could have introduced evidence of the threats against A.S. to show Bath's motive and common plan in suddenly confronting people, threatening them, and assaulting them when he felt provoked or annoyed by them. For the same reasons, evidence of the threats and assault against J.B.L. would have been admissible in the criminal threats trial involving A.S.

Based on the cross-admissibility of the evidence alone, we cannot find the trial court abused its discretion in ordering consolidation. Even without cross-admissibility, however, the remaining factors support the court's decision.

*2. Likelihood of inflaming the jury*

The second factor in determining whether a combined trial would be prejudicial is whether some of the charges are unusually likely to inflame the jury against the defendant. (*People v. Marshall* (1997) 15 Cal.4th 1, 27-28 (*Marshall*).)

Criminal threats, robbery and assault with a deadly weapon are all serious criminal acts and none is more serious than the other. Bath, unprovoked, spat on a 19-year-old woman's face and twice threatened to kill her. In the robbery case, he forcefully took the victim's horn because he was annoyed by the noise and when

9

the victim asked for his property back, Bath assaulted him with a knife. Neither victim was physically harmed.

The crimes were similar in nature and equally offensive. The trial court reasonably concluded that neither incident was unusually likely to inflame the jury against Bath.

### 3. *Joinder of weak case with a strong case*

The third factor in determining prejudice is whether a weak case has been joined with a strong case or another weak case so that the total evidence on the joined charges may alter the outcome of some or all of the charged offenses. (*Marshall*, *supra*, 15 Cal.4th at pp. 27-28.)

To "demonstrate the potential for a prejudicial spillover effect, a defendant must show an 'extreme disparity' in the strength or inflammatory character of the evidence." (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1436 (*Ybarra*), quoting *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1284.)

Here, the trial court properly found that neither case was stronger than the other. Both cases relied on the credibility of the named victim. Both cases involved a partial videotape corroborating the testimony. Neither crime was captured completely on tape. Bath made statements to police in both cases. He said he was provoked by A.S. during the first incident and annoyed by J.B.L. in the second.

Bath claims the criminal threats case was weaker, and the jury would have had reasonable doubt that A.S. was in "sustained fear for her safety" had the cases not been tried together. He fails, however, to explain how evidence of the robbery incident would improperly influence the jury's decision about whether A.S. was in sustained fear when he threatened to kill her and spat on her.

10

The evidence that A.S. was afraid of Bath was strong, based on her own description of the incident and Officer Buttell's description of her demeanor when he talked to her soon afterward. A.S. said Bath had threatened her previously through her work supervisor. When they made eye contact at the library, she looked away but he came up from behind, threatened to kill her multiple times and spat in her face. She immediately reported the incident to library staff. Officer Buttell described A.S. as visibly upset, scared, crying and "shaken."

The strength of the evidence as to both incidents was comparatively equal.

The statutory requirements for joinder were met. Bath has failed to show the trial court abused its discretion in consolidating the cases.

*Joinder did not result in gross unfairness*

Even when we conclude, as we do here, that the trial court acted well within its discretion in denying severance or consolidating charges, we must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in " 'gross unfairness' " amounting to a denial of defendant's constitutional right to a fair trial or due process of law. (*Merriman*, *supra*, 60 Cal.4th at p. 46.)

A defendant has a " 'high burden' " to establish gross unfairness from joinder. (*Ybarra*, *supra*, 245 Cal.App.4th at p. 1438). Here, the trial record contains no evidence that consolidation caused gross unfairness. The evidence of guilt at trial was overwhelming in both cases and played out largely as the People predicted in their motion to consolidate.

The trial testimony about the first incident independently proved that Bath threatened and battered A.S. Before threatening

11

A.S. at the library, Bath made it known that if he ever saw her again, he would kill her. He believed A.S. and her co-workers had bullied and harassed him. When Bath saw A.S. at the library he aggressively approached her and, without provocation, spat in her face and twice threatened to kill her. A.S. recorded the second threat and it was played at trial. While Bath did not confess, his statement to law enforcement made it clear that he was angry with A.S. and felt she had disrespected him.

Similarly, the trial evidence regarding the robbery and assault of J.B.L. played out the way it had been briefed in the People's pretrial motion to consolidate. Before the robbery, Bath made it clear that he was angry and frustrated enough to "eventually kill" a food cart vendor who was using a horn to attract customers. J.B.L. testified that Bath aggressively approached and grabbed the horn from him. When J.B.L. asked Bath to return the horn, Bath tried to stab him. Video evidence corroborated J.B.L.'s testimony and Bath's identity.

Both victims testified at trial, and there is nothing in the record to suggest one was less credible than the other. We cannot find one of the victims' testimonies impermissibly bolstered the credibility of the other.

Bath has not met his " 'high burden' " of establishing gross unfairness from joinder. (*Ybarra*, *supra*, 245 Cal.App.4th at p. 1438.)

### *Evidence Code sections 1101, subdivision (b) and 352*

Next, Bath contends the trial court abused its discretion in admitting threatening e-mails and text messages under Evidence Code section 1101, subdivision (b). He argues that the e-mails and text messages should have been excluded because they were nothing more than propensity evidence. He also argues that the

evidence should have been excluded under Evidence Code section 352.

We review the admission of evidence under Evidence Code sections 1101, subdivision (b) and 352 for abuse of discretion. The trial court's ruling will not be disturbed unless the court acted in an arbitrary, capricious or patently absurd manner. (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 330.)

Generally, evidence of prior uncharged acts is inadmissible to show a defendant's bad character or predisposition to criminality. (Evid. Code, § 1101, subd. (a).) As an exception to the general rule, evidence of a prior uncharged crime or "other act" is admissible under section 1101, subdivision (b) to prove a material fact such as intent, motive, common plan, or identity. To be admissible, the evidence must involve conduct similar to the charged offense, with the degree of required similarity depending on the purpose for which the evidence is offered. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Otherwise admissible evidence is subject to exclusion when its probative value is substantially outweighed by the probability of undue prejudice, confusion, or consumption of time. (Evid. Code, § 352.) Evidence is substantially more prejudicial than probative if it poses an intolerable risk to the fairness of the proceedings. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1114.)

" 'Undue prejudice' refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis: 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to

13

prove guilt is prejudicial or damaging to the defendant's case.  The stronger the evidence, the more it is 'prejudicial.' " ' [Citations.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 806.)

*Threatening e-mails about the food cart vendor*

Here, the trial court admitted Bath's e-mails to his apartment complex manager, E.G., in which he complained about a food cart vendor using a "clown horn" and threatened, "I'll probably eventually end up killing that guy."[2]  The court instructed the jury that it could consider this evidence "only with regard to Count 3" the robbery of J.B.L.  The evidence was admitted for intent, motive, lack of mistake or accident, and common plan or scheme.

Bath's e-mails to E.G. were properly admitted pursuant to Evidence Code section 1101, subdivision (b) to prove motive or intent.  "To be admissible to show intent, 'the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1194, quoting *People v. Yeoman* (2003) 31 Cal.4th 93, 121.)

The threatened conduct in the e-mails is very similar to Bath's actions when he robbed and assaulted J.B.L.  J.B.L. was a food cart vendor using a horn – the very behavior Bath complained about in his e-mails to E.G.  The e-mails show that Bath was provoked by the use of the horn and he told E.G. that he would probably "fuck up" the vendor or even end up "killing that guy" if E.G. didn't stop the vendor.  The e-mails are strong evidence of Bath's intent and motive when he robbed J.B.L. and tried to stab or cut him.  Bath did precisely what he threatened to do in the e-mails.

---

[2] The e-mails were redacted to remove the racial slur.

14

Further, the trial court did not abuse its discretion in refusing to exclude the e-mails under Evidence Code section 352. The threats could be viewed as direct proof of Bath's mindset at the time he robbed and assaulted J.B.L. Their probative value is high because they provide evidence of Bath's intent, an element of both crimes. The e-mails are not unduly prejudicial because the threats of violence are not more inflammatory than the evidence of the actual violence of the completed crimes.

*Threatening texts to the rescue mission*

Bath's texts to D.P.M threatening to stab her and "stab a bunch of fucking children" because he felt slighted by Rescue Mission staff were properly admitted as evidence of intent, motive, and common plan or scheme as to all counts. Again, Bath's threats of violence against D.P.M. because he felt Rescue Mission staff had disrespected him were very similar to the threats he made to kill A.S. and J.B.L. when he felt slighted or annoyed. Like the e-mails to E.G., the texts are evidence of Bath's mindset when he threatened and assaulted the named victims.

The trial court did not abuse its discretion under Evidence Code section 352 in admitting the text messages. The texts were probative, for the reasons stated above, and not unduly prejudicial. Threatening to stab children may be more inflammatory than threatening other kinds of violence. However, in the context of Bath's conduct – threatening to harm or kill the named victims and attempting to stab J.B.L. – the court was within its discretion in deciding that the risk of undue prejudice did not outweigh the probative value of the texts.

## Section 654

### Separate sentences for robbery and assault with a deadly weapon

Bath contends the trial court erred when it sentenced him on counts 3 and 4 for both second degree robbery and assault with a deadly weapon, in violation of section 654. We agree.

The trial court imposed a three-year sentence on count 3 (robbery) and stayed punishment for an attached knife use allegation. It imposed a consecutive term of one year on count 4 (assault with a deadly weapon).

### Standard of review for separate sentences

We review the trial court's decision to sentence Bath separately for the robbery conviction and the assault with a deadly weapon conviction, for substantial evidence that he harbored a separate intent and objective for each offense. (§ 654; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414 (*Dowdell*).) We conclude there was no substantial evidence to support the separate sentences.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

Section 654 bars the imposition of multiple sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code. " 'The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability.' [Citation.]" (*Dowdell, supra,* 227 Cal.App.4th at p. 1414.)

16

Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) Whether an assault was committed with the intent to facilitate a robbery is a "fact-bound determination." (*People v. Sandoval* (1994) 30 Cal.App.4th 1288, 1299.)

Additionally, temporal proximity, or the lack of it, can be a relevant consideration in determining the divisibility of a course of conduct. (*People v. Nunez* (2012) 210 Cal.App.4th 625, 630 (*Nunez*).) In *Nunez*, a carjacking case, we held that the defendant "wielded the hammer to take the car." (*Ibid.*) Since the defendant used the weapon to accomplish the carjacking, he could not be sentenced separately for carjacking and assault with a deadly weapon. "The hammer use and taking of the car were contemporaneous if not simultaneous." (*Ibid.*)

As in *Nunez*, *supra*, 210 Cal.App.4th 625, Bath committed the two offenses during the same indivisible transaction with the common objective of permanently depriving J.B.L. of his horn. J.B.L. testified that Bath approached him "loudly and fast" yelling "shut up, shut up." Bath then grabbed J.B.L.'s wrist and forcefully took his horn. After J.B.L. asked "why" and reached out to gesture for the horn back, Bath pulled out the knife. He struck J.B.L. on the arm with the handle of the knife and swung the blade toward J.B.L.'s stomach. There is no substantial evidence to support the trial court's implicit finding that Bath's intent in assaulting J.B.L. was separate from his intent to rob him of the horn.

17

Here, there was no time between the robbery and assault with a deadly weapon. (*Nunez*, *supra*, 210 Cal.App.4th 625, 630.) These acts were contemporaneous, if not simultaneous. (*Id*. at. p. 629.) J.B.L. testified, "Everything happened so fast. It's not like we're taking pauses like here, we're taking a long time to explain everything. But everything happened at the same moment and very quickly."

We disagree with the People's assertion that there was no evidence Bath used the knife to retain possession of the horn. The assault with the knife was incidental to and facilitated the armed robbery. After J.B.L. reached out to signal for his horn back, Bath brandished the knife and assaulted him. The conduct was akin to an *Estes*[3] robbery. In fact, the People made that argument during their closing, telling the jury, "And then he pulls out the knife so the victim can't reclaim his property." The assault with a deadly weapon was indivisible from the robbery.

The trial court should not have imposed a consecutive one-year sentence on count 4 in addition to the three-year sentence imposed on count 3.

## DISPOSITION

We remand the matter for the trial court to resentence Bath pursuant to section 654 and stay punishment on either count 3

---

[3] "[A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28.)

18

(robbery) or count 4 (assault with a deadly weapon). In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


VAN ROOYEN, J.*


We concur:


BALTODANO, Acting P. J.


CODY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

Paul Feldman, Judge

Superior Court County of Ventura

_____

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.